TUCHER, J.
*186 Appellants Emmanuel Chioma and Antonio Edwards were each convicted on multiple counts arising from their joint sexual assault and robbery of Jane Doe and robbery of her male friend. With "one-strike" and other allegations against them, Chioma was sentenced to 129 years to life, and Edwards was sentenced to 95 years to life. Appellants were both 19 years old when they committed these offenses.
*45 Appellants challenge their respective prison sentences as cruel and unusual punishment, and they challenge on equal protection grounds their exclusion from the provisions of Penal Code section 3051[1] -which mandates youthful-offender parole hearings for most who receive de facto life sentences for crimes they commit at or before age 25. In the published portion of our opinion, we reject appellants' cruel and unusual punishment challenge but accept their equal protection arguments. In the unpublished portion we reject two further challenges-Chioma's to the sufficiency of the evidence of his involvement in the crimes and Edwards's to the admission into evidence of photographs recovered from Chioma's phone. We therefore affirm the judgments, except to the extent we remand to allow appellants to develop the record with evidence of youth-related factors that will be relevant in a youthful-offender parole hearing.
BACKGROUND
I. Sexual Assault and Robberies
At 11:30 p.m. on December 8, 2012, Jane Doe and Rafael Reynolds stopped at Reynolds's Oakland home before driving to a fundraiser where *187 Reynolds, a professional photographer, planned to take photographs. Inside, one of Reynolds's roommates told them someone had been robbed nearby by two men several hours earlier. When Doe and Reynolds prepared to leave for the fundraiser, they paused on their way out as they saw two men walk by. When the men were out of sight, Doe got into the passenger seat of her Mercedes, which Reynolds planned to drive to the fundraiser, and Reynolds went to his truck to retrieve some photography equipment. It was approximately 11:45 p.m.
Suddenly, a man opened the passenger door to the Mercedes, placed a gun to Doe's head and ordered her out of the car. The gunman, Chioma, demanded money from Doe and grabbed her bag. Another man, Edwards, put a gun to Reynolds's head and ordered him to the ground. One of the gunmen took Reynolds's keys, money clip, and phone. Edwards then switched positions with Chioma and placed his gun to Doe's chest. Edwards opened Doe's jacket and lifted up her shirt. Chioma returned and directed Doe to get on her knees in between the two vehicles. With a gun still to her head, Doe complied. Chioma then took out his penis and forced Doe to orally copulate him, telling her "to act like you mean it" if she did not want "something to happen" to her.
Edwards then ordered Doe to stand up, pulled her pants down, and forced his penis into her vagina. For a time, Chioma compelled Doe to orally copulate him while Edwards was raping her. Then, as Edwards persisted in raping Doe, Chioma moved away and began searching through the Mercedes to see what "he could take." Edwards paused in raping Doe to pull her into the back seat of the Mercedes, but Chioma immediately told him to remove her. Edwards again raped Doe from behind, attempting to insert his penis into her anus before inserting it back into her vagina. Meanwhile, Chioma walked to where Reynolds lay on the ground and hit Reynolds in the back of the head with his gun; Doe recalled hearing a "crack" which she was "sure was the gun." Edwards eventually withdrew his penis and Doe saw him ejaculate onto the ground near where they were standing. Chioma and Edwards then left. In addition to the items already taken from Reynolds, the two men left with Doe's purse, including her wallet and phone.
*46 Doe found Reynolds unconscious. She summoned one of Reynolds's roommates to call 911, and the Oakland police responded to investigate. Officers spoke with Doe and recovered the semen from the ground near her car. In a subsequent meeting with police, Doe identified a photograph of Chioma as the person who pulled her out of the car and forced her to orally copulate him. At trial, she identified Chioma with "a hundred percent certainty." Doe could not positively identify Edwards, however. Edwards was identified by DNA recovered from the semen. Police recovered a fingerprint matching Chioma's from the driver's-side door of Doe's car.
*188 Police also obtained surveillance video from outside Reynolds's home, and the prosecution played it for the jury at trial. The video depicted most of the incident, including Doe and Reynolds parking her car and entering Reynolds's house, leaving Doe's Mercedes in the center of the image; Doe and Reynolds exiting Reynolds's house and returning to their vehicles; one assailant removing Doe from her Mercedes and another forcing Reynolds out of view; Doe being forced to her knees to orally copulate someone; someone else having vaginal sex with her from behind; two men walking away; and Doe checking on Reynolds and then ringing the buzzer to his house. Doe acknowledged the video was not clear enough to show faces, but she was confident it clearly depicted the incident, including the respective actions of the two assailants.
Reynolds sustained a concussion that left him unable to walk for several days and unable to focus his eyes-particularly with a camera-for significant periods of time. He still suffered from abnormal eyesight, headaches, and an inability to concentrate at the time of trial in 2015.
II. Arrests in Possession of Firearms
Five days after the assault, at approximately 10:30 p.m., appellants were detained by private security officers after Chioma purchased drugs in Oakland. Chioma, Edwards, and a friend had driven to the purchase location and were stopped while still in their vehicle. Edwards was in the driver's seat, Chioma was in the front passenger's seat, and their friend was in the back seat. The security officers located a handgun in Chioma's waistband and another gun, with an extended magazine, on the floorboard beneath where Edwards was sitting. An Oakland police officer was dispatched to the scene and recovered the guns. The gun recovered from Chioma's waistband was a loaded .40-caliber Glock with a 30-round clip. The gun recovered from the driver's side floorboard was a loaded .45-caliber Colt with an extended magazine. Officers also seized four mobile phones during the incident and booked them into evidence. Chioma and Edwards were arrested.
Police subsequently examined the four mobile phones and their contents. From an HTC phone identified with Chioma, police recovered several photographs taken in the months leading up to these incidents. Several of the photographs depicted guns, including the two guns found in the car that night. The parties described one of the photographs as showing "Edwards allegedly or purportedly with a gun on his hip." The same phone received a call from a contact listed as "Bankhead" at approximately 11:45 p.m. on December 8, 2012. This was just as the assault of Doe and Reynolds began, and the call lasted 13 minutes and 26 seconds. A phone associated with Edwards did not contain photographs of guns.
*189 III. Procedural Background
The operative consolidated information charged appellants with the following *47 counts as to the December 8, 2012 incident: oral copulation by acting in concert with force and fear (§ 288a, subd. (d)(1) (count 1) ) as to Chioma and Edwards; attempted sodomy by use of force (§ 286, subd. (c)(2)(A) (count 2) ) as to Edwards only; forcible rape while acting in concert (§ 264.1, subd. (a) (counts 3 and 4) ) as to Chioma and Edwards; assault with a firearm (§ 245, subd. (a)(2) (count 5) ) as to Chioma only; and second degree robbery (§ 211 (counts 6 and 7) ) as to Chioma and Edwards.
As to the December 13h, 2012 incident, the information charged appellants with: carrying a concealed firearm on the person (§ 25400, subd. (a)(2) (count 8) ) as to Chioma only; carrying a loaded firearm on one's person in a city (§ 25850, subd. (a) (count 9) ) as to Chioma only; carrying a concealed firearm within a vehicle (§ 25400, subd. (a)(1) (count 10) ) as to Edwards only; carrying a loaded firearm on one's person in a vehicle in a city (§ 25850, subd. (a) (count 11) ) as to Edwards only; and possession of a firearm by a felon with priors (§ 29800, subd. (a)(1) (count 12) ) as to Edwards only.
The information also alleged numerous sentencing enhancements against appellants. Enhancement allegations arising from the sexual assault and robbery included those against Chioma for inflicting great bodily injury on Reynolds (§ 667.61, subd. (d)(6) ), against Edwards for Chioma's infliction of great bodily injury on Reynolds in the course of Edwards's violation of section 288a, subdivision (d) (in-concert oral copulation with force and fear) (§ 667.61, subds. (e)(7) and (d)(6) ), and against both Chioma and Edwards for personal use of a firearm (§§ 667.61, subd. (e)(3), 1203.06, subd. (a)(1), 12022.5, subd. (a), 12022.53, subd. (b), and 12022.53, subd. (g) ). If found true by the jury, these enhancements would mandate that appellants each serve a sentence of at least 25 years to life on count 1 (forced oral copulation in concert), count 3 (forcible rape in concert), and count 4 (forcible rape in concert). (§ 667.61, subds. (c)(3) & (c)(7).)
On October 29, 2015, the jury found Edwards guilty as charged except as to count 2 (attempted sodomy by force), and found all related allegations true. The jury found Chioma guilty as charged and all related allegations true. On December 7, 2015, the court sentenced Chioma to a prison term of 129 years to life and Edwards to a prison term of 95 years to life. Appellants each filed a timely notice of appeal.
*190 DISCUSSION
I. Appellants' Guilt-Phase Challenges Fail**
II. Appellants' Sentencing Claims
A. Appellants' Sentences Are Not Cruel and Unusual Punishment
"Whether a punishment is cruel and/or unusual is a question of law," so we exercise independent review while considering in the light most favorable to the judgment any underlying disputed facts. ( People v. Palafox (2014) 231 Cal.App.4th 68, 82, 179 Cal.Rptr.3d 789.)
In the opening brief appellants argue that their respective prison sentences violate federal and state prohibitions on cruel and unusual punishment by failing to account for their "extreme youth" at the time of the offenses. Both 19 years old when they committed these crimes, appellants rely on cases holding that the law requires children to be treated differently from adults for sentencing purposes, including *48 Graham v. Florida (2010) 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 ( Graham ), Roper v. Simmons (2005) 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1, Miller v. Alabama (2012) 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 ( Miller ), and People v. Caballero (2012) 55 Cal.4th 262, 145 Cal.Rptr.3d 286, 282 P.3d 291 ( Caballero ). Acknowledging they were over 18, appellants contend "none of the relevant mitigating characteristics of youth discussed in those cases end abruptly on one's 18th birthday." Appellants do not revisit this argument in their reply briefs, however, and we reject it for the reasons stated in People v. Argeta (2012) 210 Cal.App.4th 1478, 1482, 149 Cal.Rptr.3d 243, namely that a defendant's 18th birthday marks a bright line, and only for crimes committed before that date can he or she take advantage of the Graham / Caballero jurisprudence in arguing cruel and unusual punishment. ( Ibid . ) We turn, then, to appellants' proportionality arguments.
The Eighth Amendment contains a " 'narrow proportionality principle' that 'applies to noncapital sentences.' " ( Ewing v. California (2003) 538 U.S. 11, 20, 123 S.Ct. 1179, 155 L.Ed.2d 108.) The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." ( Harmelin v. Michigan (1991) 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 ( Harmelin ) (conc. opn. of Kennedy, J.).) Reviewing courts must " 'grant substantial deference to the broad authority that legislatures *191 necessarily possess in determining the types and limits of punishments for crimes.' " ( Id ., at p. 999, 111 S.Ct. 2680, quoting Solem v. Helm (1983) 463 U.S. 277, 290, 103 S.Ct. 3001, 77 L.Ed.2d 637.) This is especially so in assessing the proportionality of a sentence of imprisonment, where "the relative lack of objective standards concerning terms of imprisonment" means that successful challenges are " ' "exceedingly rare." ' " ( Harmelin, at p. 1001, 111 S.Ct. 2680, quoting Solem v. Helm , supra , at pp. 289-290, 103 S.Ct. 3001.) Even "extended analysis" of a sentence's proportionality is rarely required. ( Harmelin, at p. 1004, 111 S.Ct. 2680.) "[C]omparative analysis within and between jurisdictions is ... [¶] ... appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." ( Id . at pp. 1004-1005, 111 S.Ct. 2680.)
" 'Article I, section 17, of the California Constitution separately and independently lays down the same prohibition' " as the Eighth Amendment. ( People v. Marshall (1990) 50 Cal.3d 907, 938, 269 Cal.Rptr. 269, 790 P.2d 676, quoting People v. Poggi (1988) 45 Cal.3d 306, 349, 246 Cal.Rptr. 886, 753 P.2d 1082 (conc. & dis. opn. of Mosk, J.).) A punishment may violate article I, section 17 of the California Constitution if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." ( In re Lynch (1972) 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 503 P.2d 921, fn. omitted.) It requires that we "examine the circumstances of the offense" and the defendant in determining whether the "the penalty imposed is 'grossly disproportionate to the defendant's culpability.' " ( Cox , supra , 30 Cal.4th at pp. 969-970, 135 Cal.Rptr.2d 272, 70 P.3d 277, quoting People v. Dillon (1983) 34 Cal.3d 441, 479, 194 Cal.Rptr. 390, 668 P.2d 697.) We assess three factors in making this determination: (1) the nature of the offense and the offender, and the degree of danger posed to society; (2) a comparison with sentences for more serious offenses under California law; and (3) a comparison with sentences imposed by other states for the same offense. ( *49 Lynch, at pp. 425-427, 105 Cal.Rptr. 217, 503 P.2d 921.)
Appellants argue that their respective sentences shock the conscience considering the circumstances of the crimes, the "attenuated" level of violence involved, and their minimal criminal histories. Appellants challenge only the total length of their prison sentences-129 years for Chioma and 95 years for Edwards-rather than any specific sentencing decision by the trial court.
Given the limited role for a reviewing court in a case where the challenge is to the length of a prison term, we reject this argument. Appellants' crimes here were egregious. What may have begun as an armed robbery quickly turned into a violent sexual assault. After demanding her valuables, Chioma *192 held a gun to Jane Doe's head to force her to orally copulate him and to facilitate two instances of rape by Edwards. In response to perceived resistance, Chioma hit Reynolds in the head with a gun, leaving him with damaged eyesight. Also using a gun, Edwards raped Doe on two separate occasions during the incident. We acknowledge that each appellant had little prior criminal history and no prior history of committing sex offenses, but these facts do not outweigh the ruthlessness of this attack.
A key factor in the length of each appellant's sentence was the trial court's determination that the sentences on the sex counts be served consecutively pursuant to rule 4.426 of the California Rules of Court. Appellants do not challenge the trial court's findings under rule 4.426, or its conclusion that their relevant sentences must be served consecutively. The sentencing record reflects that the trial court followed the statutory guidelines and rules of court assiduously, detailing each appellant's path to his total prison term.
Under these circumstances, we find no principled basis for concluding that these sentences, though each amounts to a term of life in prison, fall outside the range where a reviewing court must defer to legislative judgments on criminal sentencing. (See Harmelin , supra , 501 U.S. at p. 999, 111 S.Ct. 2680 (conc. opn. of Kennedy, J.).) We cannot conclude that either sentence violates federal or state constitutional proscriptions on cruel and/or unusual punishment.
B. Equal Protection Requires Youthful-Offender Parole Hearings for One-Strikers
Appellants contend that section 3051, subdivision (h) violates the Equal Protection Clause of the Fourteenth Amendment by excluding certain young adult offenders, such as themselves, from its protections. Under section 3051, a person convicted of an offense committed when he or she was 25 years of age or younger becomes eligible for release on parole at a youth-offender parole hearing held during his or her 15th, 20th, or 25th year of incarceration, depending on the offense. ( § 3051, subd. (b).) However, section 3051, subdivision (h) excludes offenders like appellants who were sentenced under section 667.61, the "One Strike" law. Appellants' equal protection challenge to this exclusion is a facial challenge, as it was not raised in the court below. (See In re Sheena K. (2007) 40 Cal.4th 875, 885, 55 Cal.Rptr.3d 716, 153 P.3d 282.)
1. Chioma and Edwards are "One-Strikers"
The "One Strike" law is an alternative, harsher sentencing scheme that applies to specified felony sex offenses. ( People v. Anderson (2009) 47 Cal.4th 92, 102, 97 Cal.Rptr.3d 77, 211 P.3d 584.) Appellants were each convicted *193 of forcible rape in *50 concert and forcible oral copulation in concert, which are among the offenses that qualify for treatment under the One Strike law. (§ 667.61, subds. (c)(3), (c)(7).)
"For sex crimes falling within its reach [citation], a first-time offense can result in one of two heightened sentences. The sentence will be 15 years to life if the jury finds (or the defendant admits) one or more of the 'circumstances' listed in section 667.61, subdivision (e)." ( People v. Perez (2015) 240 Cal.App.4th 1218, 1223, 193 Cal.Rptr.3d 230 ( Perez ).) "The sentence will be 25 years to life if the jury finds (or the defendant admits) either (1) two of the 'circumstances' listed in section 667.61, subdivision (e), or (2) one of the more aggravated circumstances listed in section 667.61, subdivision (d)." ( Perez , supra , 240 Cal.App.4th at p. 1223, 193 Cal.Rptr.3d 230.)
Several circumstances enumerated in subdivisions (d) and (e) are relevant to this case. Subdivision (d) includes crimes where "[t]he defendant personally inflicted great bodily injury on the victim or another person in the commission of the present offense. ..." (§ 667.61, subd. (d)(6).) This circumstance applies to Chioma, who inflicted such injury on Reynolds. Subdivision (e) includes crimes where a "defendant personally used a dangerous or deadly weapon or a firearm ...," a circumstance that applies to both defendants here. (§ 667.61, subd. (e)(3).) Subdivision (e) also reaches crimes, in the commission of which, "any person" inflicts great bodily injury on the victim of the sex crime or another person. (§ 667.61, subd. (e)(7).) This enhancement applies to Edwards, as a result of another person-Chioma-having injured Reynolds.
In sum, Chioma qualifies as a "One-Striker" because the jury found true the allegations under section 667.61, subdivision (d)(6) that he personally inflicted great bodily injury on Reynolds. Then, because the jury also found true the firearm enhancements, but Chioma was already a One-Striker without them, Chioma's sentence for each of counts 1, 3, and 4 rose to 35 years to life. (§ 667.61, subd. (f); § 12022.53, subd. (b).) Meanwhile, Edwards qualified as a "One-Striker" because the jury found true as to each count two subdivision (e) allegations: that Edwards used a firearm, and that Chioma inflicted great bodily injury on Reynolds. (§ 667.61, subd. (e)(3) & (7).) The jury's findings on these allegations subjected Edwards to 25 years to life on each of counts 1, 3, and 4.
2. Section 3051 Establishes Youthful-Offender Parole Hearings
In Caballero , the California Supreme Court urged the state legislature to establish a parole eligibility mechanism for a defendant "serving a de facto life sentence without possibility of parole for nonhomicide crimes that he or *194 she committed as a juvenile." ( Caballero, supra , 55 Cal.4th at p. 269, fn. 5, 145 Cal.Rptr.3d 286, 282 P.3d 291.) The Legislature complied and then went a step further, creating a parole eligibility mechanism for juvenile offenders that includes homicide defendants, which it subsequently expanded to reach most defendants serving long sentences for crimes they committed at 25 years of age or younger. ( People v. Contreras (2018) 4 Cal.5th 349, 381, 229 Cal.Rptr.3d 249, 411 P.3d 445 ( Contreras ).) This parole eligibility mechanism is section 3051.
Section 3051 affects three categories of lengthy sentences. A defendant who commits his or her "controlling offense" at age 25 or younger and who receives a long determinate sentence becomes eligible for release on parole "during his or her 15th year of incarceration." ( § 3051, subd. (b)(1).) When the sentence for the controlling offense is a life term of less than 25 *51 years to life , the offender becomes eligible for parole during the 20th year of incarceration. ( § 3051, subd. (b)(2).) And when the sentence for the controlling offense is 25 years to life , the offender becomes eligible for parole during the 25th year of incarceration. ( § 3051, subd. (b)(3).) " 'Controlling offense' means the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." ( § 3051, subd. (a)(2)(B).) Chioma's and Edwards's sentences would fit into the third category, for controlling offenses punished by sentences of 25 years to life.
Section 3051 has a carve-out, however, and it is the scope of that carve-out that gives rise to appellants' equal protection claim. Subdivision (h) of section 3051 expressly excludes from eligibility for a youthful-offender parole hearing any inmate sentenced under the Three Strikes law, under the One Strike law, or to Life Without Possibility of Parole (LWOP) for an offense committed after the defendant turned 18.[2] Because Chioma and Edwards were sentenced as "One-Strikers," section 3051, subdivision (h) renders them ineligible for a youthful-offender parole hearing, even though they committed their crimes at age 19.
3. Equal Protection Renders One-Strikers Eligible for Youthful-Offender Parole Hearings
Appellants argue that section 3051, subdivision (h), violates their right to equal protection because, although the statute reaches almost all *195 youthful offenders who draw life terms or long determinate sentences, it excludes them. Specifically, section 3051 reaches first degree murderers but excludes One Strikers. Appellants contend they are similarly situated to youthful first degree murderers, and they challenge their exclusion from this statutory scheme as unsupported by any rational basis, arguing it is driven only by "the fact that the public has a special distaste for sex offenders." We conclude that while a sentencing scheme can rationally express the public's distaste for sex offenders, it cannot limit their opportunity for eventual parole more harshly than it limits these who commit intentional first degree murder. Equal protection requires that Chioma and Edwards, like those whose controlling offense is first degree murder punishable by 25 years to life, be afforded a youthful offender parole hearing during the 25th year of their incarceration.
The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws. To succeed on an equal protection claim, appellants must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner. ( People v. Wilkinson (2004) 33 Cal.4th 821, 836, 16 Cal.Rptr.3d 420, 94 P.3d 551.) For example, One Strike rapists and first degree murderers, both aged 25 years or younger, are two groups of violent youthful offenders who seek the opportunity to demonstrate after extended terms of imprisonment that they should rejoin society. The *52 two groups are, for purposes of section 3051, "similarly situated." ( People v. Brandao (2012) 203 Cal.App.4th 436, 442, 137 Cal.Rptr.3d 672.)
Where a class of criminal defendants is similarly situated to another class of defendants who are sentenced differently, courts look to determine whether there is a rational basis for the difference. ( Johnson v. Department of Justice (2015) 60 Cal.4th 871, 882, 183 Cal.Rptr.3d 96, 341 P.3d 1075.) "[E]qual protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " ( People v. Turnage (2012) 55 Cal.4th 62, 74, 144 Cal.Rptr.3d 489, 281 P.3d 464 ( Turnage ).) "This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in ' "rational speculation" ' as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review 'whether or not' any such speculation has 'a foundation in the record.' " ( Id. at pp. 74-75, 144 Cal.Rptr.3d 489, 281 P.3d 464.) To mount a successful rational basis challenge, a party must " 'negative every conceivable basis' " that might support the disputed statutory disparity. ( Heller v. Doe (1993) 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 ; see Turnage, at p. 75, 144 Cal.Rptr.3d 489, 281 P.3d 464.) If a plausible *196 basis exists for the disparity, "[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law." ( Turnage, at p. 74, 144 Cal.Rptr.3d 489, 281 P.3d 464.)
Because rational basis review is a highly deferential standard, one published opinion that has considered the equal protection argument appellants make here has already rejected the challenge ( People v. Bell (2016) 3 Cal.App.5th 865, 876-880, 208 Cal.Rptr.3d 102 ( Bell ), review granted on another ground on Jan. 11, 2017), but that decision has since been ordered vacated ( People v. Bell (2018) --- Cal.5th ----, 234 Cal.Rptr.3d 74, 419 P.3d 534 [transferring for reconsideration in light of Contreras , supra , 4 Cal.5th 349, 229 Cal.Rptr.3d 249, 411 P.3d 445 ].) The Bell court concluded that concerns about recidivism provide a rational basis for excluding One Strike defendants from the benefits of section 3051. ( Bell , at p. 879, 208 Cal.Rptr.3d 102.) The California Supreme Court granted review in Bell and deferred further action pending its decision in Contreras .
In deciding Contreras , the Supreme Court held that the Eighth Amendment prevents juvenile non-homicide offenders from receiving sentences so long that the offenders will have no prospect of release while still young enough to reintegrate with society. Contreras involved two 16-year-olds convicted of kidnapping and sexual offenses, sentenced to 50 years to life and 58 years to life, respectively. These sentences meant the young men could expect to become eligible for parole late in life. ( Contreras , supra , 4 Cal.5th at pp. 356, 368, 229 Cal.Rptr.3d 249, 411 P.3d 445.) Caballero had previously held that for a juvenile to receive a sentence twice that long-110 years to life-violates the Eighth Amendment because this sentence is the "functional equivalent of LWOP." ( Contreras , at p. 360, 229 Cal.Rptr.3d 249, 411 P.3d 445.) Contreras extends Caballero by applying the same reasoning and reaching the same result for juvenile non-homicide offenders whose sentences, while lengthy, are not "well in excess of natural life expectancy." ( Ibid . )
*53 In Contreras the high court acknowledged, but had no occasion to resolve, the equal protection challenge to section 3051. ( Contreras , supra , 4 Cal.5th at p. 382, 229 Cal.Rptr.3d 249, 411 P.3d 445.) Dicta in Contreras highlights, however, a consistent theme in constitutional jurisprudence that we think does resolve the equal protection challenge. Contreras quotes Graham, supra, 130 S.Ct. 2011, for this proposition: " '[D]efendants who do not kill, intend to kill, or foresee that life will be taken are categorically less deserving of the most serious forms of punishment than are murderers. ... Although an offense like robbery or rape is "a serious crime deserving serious punishment," those crimes differ from homicide crimes in a moral sense.' " ( Contreras , at p. 366, 229 Cal.Rptr.3d 249, 411 P.3d 445.) Contreras goes on to observe, "[i]n the death penalty context, the high court has said 'there is a distinction between intentional first-degree murder on the one hand and nonhomicide crimes against individual persons, even including child rape, on the other. The latter crimes may be devastating *197 in their harm, as here, but "in terms of moral depravity and of the injury to the person and to the public," they cannot be compared to murder in their "severity and irrevocability." ' ( Kennedy v. Louisiana (2008) 554 U.S. 407, 438 [128 S.Ct. 2641, 171 L.Ed.2d 525], citation omitted.)" ( Contreras , at p. 382, 229 Cal.Rptr.3d 249, 411 P.3d 445.) Contreras , in short, confirms that there is no crime as horrible as intentional first degree murder.
United States Supreme Court case law has long distinguished between such murders and other crimes against persons, reserving the most draconian sentences for murderers alone. Consistent with the Eighth Amendment, first degree murderers can be executed; defendants convicted of even the most egregious sexual crimes cannot. ( Kennedy v. Louisiana, supra, 554 U.S. 407, 128 S.Ct. 2641 [aggravated rape of a child]; Coker v. Georgia (1977) 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 [armed robbery, rape of an adult woman, and other felonies].) Juveniles who murder can be sentenced to life without the possibility of parole, if in fixing that sentence the sentencer has considered mitigating circumstances including "how children are different, and how those differences counsel against" an LWOP sentence. ( Miller, supra, 567 U.S. at pp. 479-480, 489, 132 S.Ct. 2455.) Juveniles who commit non-homicide crimes, by contrast, are categorically exempt from LWOP sentences. ( Graham , supra , 560 U.S. at p. 82, 130 S.Ct. 2011.) Section 3051 flouts this pattern. It makes youthful-offender parole hearings available to intentional first degree murderers after 25 years of incarceration, while categorically denying them to One Strike sex offenders.
Considering this U.S. Supreme Court jurisprudence and the California Supreme Court's invocation of it in Contreras , we conclude section 3051 's carve-out for One Strike defendants violates principles of equal protection. It is, to that extent, unconstitutional. We see no rational relationship between the disparity of treatment and a legitimate governmental purpose. Certainly, the crimes punished by the One Strike law are heinous, and the crimes in this case are among the most awful in our judicial system short of murder. But United States Supreme Court and California Supreme Court precedent has already determined that these defendants " 'are categorically less deserving of the most serious forms of punishment than are murderers.' " ( Contreras , supra , 4 Cal.5th at p. 366, 229 Cal.Rptr.3d 249, 411 P.3d 445, quoting Graham , supra , 560 U.S. at p. 69, 130 S.Ct. 2011.) Because the Legislature made youthful offender parole hearings available even for first degree murderers (except those who committed murder as an *54 adult and received an LWOP sentence), there is no rational basis for excluding One Strike defendants from such hearings. This does not mean, of course, that Chioma, Edwards, or any other One Strike defendant will be released from prison after 25 years in custody, only that they will become eligible for a youthful offender parole hearing at that time. *198 Respondent makes two arguments against the equal protection challenge. First the attorney general asserts that Chioma and Edwards are not "similarly situated" with first degree murderers because their crimes are not the same. But equal protection analysis does not require that two groups of defendants be the same, or even that they be " ' "similarly situated for all purposes." ' " ( Brandao , supra , 203 Cal.App.4th at p. 442, 137 Cal.Rptr.3d 672.) It is enough that " ' " 'they are similarly situated for purposes of the law challenged.' " ' " ( Ibid . ) Here, the purpose of section 3051 is to give youthful offenders "a meaningful opportunity to obtain release" after they have served at least 15, 20, or 25 years in prison ( § 3051, subd. (e) ) and made "a showing of rehabilitation and maturity." ( Contreras , supra , 4 Cal.5th at 381, 229 Cal.Rptr.3d 249, 411 P.3d 445.) The Legislature said so expressly when it first passed the bill that became section 3051 : "The purpose of this act is to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity, in accordance with the decision of the California Supreme Court in Caballero, supra, 55 Cal.4th 262 [145 Cal.Rptr.3d 286, 282 P.3d 291] and the decisions of the Unites States Supreme Court in Graham[, supra,] 560 U.S. 48 [130 S.Ct. 2011], and Miller[, supra,] [132 S.Ct. 2455] 183 L.Ed.2d 407." (Sen. Bill No. 260 (2013-2014 Reg. Sess.) § 1.) Then, when the Legislature expanded section 3051 's parole eligibility mechanism to reach young adults up to the age of 25, its expressly-stated rationale was to account for neuro-science research that the human brain-especially those portions responsible for judgment and decision-making-continues to develop into a person's mid-20s. (Sen. Com. on Public Safety, Analyses of Sen. Bill. No. 261 (2015-2016 Reg. Sess.) April 28, 2015 [expanding eligibility to age 23]; Sen. Rules Comm., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1308 (2017-2018 Reg. Sess.) as amended March 30, 2017 [expanding eligibility to age 25].) Measured against this legislative purpose, youthful One Strike defendants are similarly situated with youthful first degree murderers, and the attorney general does not attempt to argue otherwise.
The attorney general's second argument is that the Legislature "clearly made a rational, moral judgment that the public should be protected from violent sex offenders, and that violent sex offenders should be incarcerated for longer periods of time." This argument is both vague and circular. Does the attorney general intend "incarcerated for longer" to be a comparison between One Strikers and murderers? If so, the argument chases its tail: the rationale for punishing One Strike offenders more harshly than murderers is simply that they should be incarcerated for longer than murderers. In fact, the attorney general sidesteps any actual comparison between One Strikers and murderers. Attempting to explain why the Legislature could believe that violent sex offenders should be punished harshly, or more harshly, the *199 attorney general offers only that "violent rapists do recidivate, and the state has a legitimate interest in severely punishing this crime." But of course murderers, too, recidivate, and the state has an *55 interest in severely punishing the crime of murder. The essence of an equal protection challenge is a comparison between similarly situated groups, and the attorney general carefully avoids making any such comparison. Certainly, the attorney general cites no evidence that violent rapists recidivate more than other felons. Indeed, when a recidivism rationale prevailed in Bell the only evidence discussed in the opinion was to the contrary. ( Bell , supra , 3 Cal.App.5th at pp. 879-880, 208 Cal.Rptr.3d 102 [discussing Department of Corrections report].) While the law requires no empirical support for the hypothesized concern about recidivism ( Turnage , supra, 55 Cal.4th at pp. 74-75, 144 Cal.Rptr.3d 489, 281 P.3d 464 ), "the realities of the subject matter cannot be completely ignored." ( Johnson , supra , 60 Cal.4th at p. 881, 183 Cal.Rptr.3d 96, 341 P.3d 1075.)
More importantly, we cannot ignore United States Supreme Court teaching that no crime deserves categorically harsher punishment than intentional first degree murder. We recognize that an individual non-homicide defendant may on occasion draw a harsher sentence than does a first-degree murder, for reasons specific to the circumstances of the crime or the criminal history of the defendant. We express no view about this sort of comparison between sentences in individual cases, and we note that criminal history plays no role in defining a One Strike crime. The problem in this case is that an entire class of youthful offenders convicted of a crime short of homicide is, regardless of criminal history, categorically exempted from an opportunity offered to all youthful first degree murderers except those sentenced to life without possibility of parole.
The Legislature did not explain, in enacting or expanding section 3051, why it chose to exempt One Strike offenders.[3] As neither the Legislature nor the attorney general has provided a rational basis for categorically excluding youthful One Strikers, we conclude that this carve-out in section 3051, subdivision (h) violates principles of equal protection and is unconstitutional on its face. Because the law makes youthful-offender parole hearings available even to first degree murderers, it must, after 25 years of incarceration, offer the same to Chioma and Edwards.
DISPOSITION
The matter is remanded to the trial court for the purpose of determining whether Chioma and Edwards were "afforded an adequate opportunity to *200 make a record of information that will be relevant to the Board" at a youthful offender parole hearing to be held during their 25th year of incarceration. ( People v. Franklin (2016) 63 Cal.4th 261, 286-287, 202 Cal.Rptr.3d 496, 370 P.3d 1053.) In all other respects, the judgment is affirmed.
WE CONCUR:
POLLAK, P. J.
STREETER, J.

All statutory citations are to the California Penal Code, unless otherwise indicated.

See footnote *, ante .

Section 3051, subdivision (h), reads: "This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667 [Three Strikes], or Section 667.61 [One Strike], or to cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age. This section shall not apply to an individual to whom this section would otherwise apply, but who, subsequent to attaining 26 years of age, commits an additional crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison."

Also without explanation, the Legislature made a different decision in crafting the analogous Elderly Parole Program, which excludes from eligibility certain categories of recidivist defendants and first-degree murderers (those receiving LWOP or death sentences, or who killed police officers) but does not exclude One Strikers. (§ 3055, subds. (g) and (h).)