Filed 3/4/21  P. v. Turner CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TAJIRI HAMISI TURNER, JR.,<br><br>        Defendant and Appellant. | A156920<br><br><br>(San Mateo County<br>Super. Ct. No. SC082805A) |

        This is the second appeal in this case, which comes to us after the trial court resentenced Tajiri Hamisi Turner, Jr., to a term of 144 years to life in prison.[1]  Turner again appeals.  He challenges, on equal protection grounds, Penal Code section 3051, subdivision (h),[2] which excludes youth offenders sentenced pursuant to the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12)—such as Turner—from early youth offender parole consideration. Turner also contends the court failed to award him 84 additional days of presentence conduct credits, as directed by this court in our prior opinion. (*Turner, supra*, A148401, p. 13.)  We will modify the judgment to award

---

        [1] This court granted Turner's motion for judicial notice of our opinion in the first appeal (*People v. Turner* (June 1, 2018, A148401) [nonpub. opn.] (*Turner*)).

        [2] All undesignated statutory references are to the Penal Code.

Turner 84 days of presentence conduct credits.  In all other respects, we will affirm.

## BACKGROUND

Given the nature of Turner's appellate claims, we need only briefly recount the facts, which were summarized in detail in this court's prior opinion.  (*Turner, supra*, A148401, pp. 1–5.)

Turner "was charged with robbing three cell phone stores in San Mateo County using a similar modus operandi.  The first such robbery occurred at a Radio Shack . . . on February 13, 2014; the second at another Radio Shack . . . on May 14, 2014; and the third at a Verizon store . . . on September 3, 2014." (*Turner, supra*, A148401, p. 2.)  In all three incidents, Turner allegedly entered the various retail stores; pointed a gun at the workers, each of whom was working alone; and instructed the workers to fill his duffel bag with cell phones.  The workers complied.  (*Turner, supra*, A148401, pp. 2–4.)

During the first incident, Turner ordered the worker, M.M., to sit down and warned her against calling the police after she filled his duffel bag with the cell phones.  Turner then told M.M. that he was taking her purse so that he would know where she lived and that if she called the police he would kill her and harm her family.  M.M. subsequently suffered from anxiety and required therapy.  (*Turner, supra*, A148401, pp. 2–3.)

During the second incident, Turner locked the worker, D.R., in the cage where the cell phones were kept and left with the filled duffel bag.  D.R. was able to retrieve his phone from inside the cage and call the police, who arrived and let him out of the cage.  (*Turner, supra*, A148401, pp. 3–4.)

As for the third incident, the worker, Y.M., was able to escape through the back door and screamed for help.  Y.M. suffered from fear and nightmares as a result of the incident.  (*Turner, supra*, A148401, pp. 3–4.)

In addition to these incidents, "[t]he prosecution also presented evidence that defendant committed three additional cell phone store robberies, in San Francisco, San Mateo and Alameda Counties, respectively." (*Turner, supra*, A148401, p. 2.)

The operative amended information charged Turner with three counts of kidnapping to commit robbery (§ 209, subd. (b)(1)) (counts one, four, and six); three counts of second degree robbery (§ 212.5, subd. (c)) (counts two, five, and seven); one count of dissuading a witness by force or threat (§ 136.1, subds. (b)(1), (c)(1)) (count three); one count of resisting an officer by force or violence (§ 69) (count eight); and two counts of simple kidnapping (§ 207, subd. (a)) (counts nine and ten).

The amended information also alleged numerous enhancements, including two prior robbery convictions qualifying as strikes (§§ 667, subds. (a)(1) & (d), 1170.12, subds. (b) & (c)(2)) (all counts); two prior prison terms (§ 667.5, subd. (b)) (all counts); and use of a deadly or dangerous weapon in the commission of the underlying felonies (§ 12022, subd. (b)(1)) (all counts but count eight).

Turner moved for an acquittal on the kidnapping to commit robbery counts charged in counts one, four, and six. The trial court granted the motion as to counts one and six.

After a trial, the jury found Turner guilty of remaining counts two through five, seven, nine, and ten. Count eight was dismissed after the jury was unable to reach a verdict. The jury found true all enhancement

allegations.  The trial court found true the prior convictions and prior prison terms allegations.  The court sentenced Turner to 144 years to life in prison.[3]

On appeal, this court reversed the convictions for kidnapping charged in counts nine and ten and the allegations associated with those charges. (*Turner, supra*, A148401, pp. 10–12.)  We also remanded the matter with instructions to the trial court to award Turner 84 days of presentence conduct credits, in addition to the 563 days of credit for actual time served in custody. (*Turner, supra*, A148401, pp. 12–13.)

On remand, the trial court dismissed counts nine and ten and the accompanying enhancement allegations.  Turner renewed his motion for dismissal of his strike priors, pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).  The court declined to strike the prior convictions.

During resentencing, the court imposed the same aggregate sentence of 144 years to life in prison.  On count four, kidnapping for robbery (§ 209, subd. (b)(1)), which was designated as the principal term, the court sentenced Turner to a term of 36 years to life.  This term consisted of 25 years to life, imposed pursuant to the Three Strikes law (§§ 667, subd. (e), 1170.12, subd. (c)), plus a one-year consecutive term for using a deadly or dangerous weapon (§ 12022, subd. (b)(1)) and consecutive terms of five years for each of the two serious felony priors (§ 667, subd. (a)).

The court imposed the same term of 36 years to life consecutively for three other counts:  counts two (robbery; § 212.5, subd. (c)), three (dissuading a witness; § 136.1, subds. (b)(1), (c)(1)), and seven (robbery; § 212.5, subd. (c)).

---

[3] Turner filed an augmented clerk's transcript on appeal which contains documents related to his original sentence and a confidential probation officer's report.

4

The court imposed but stayed the same term for count five, as well as the accompanying allegations, pursuant to section 654.

The court awarded Turner 563 days plus 1,106 days of credit for actual time served in custody since he was originally sentenced on March 18, 2016. This timely appeal followed.[4]

While this appeal was pending, Turner submitted a letter to the trial court, a copy of which we received, indicating the court neglected to award him the 84 additional days of presentence custody credits as directed in our prior opinion. He requested that we modify the amended abstract of judgment to include the credits. We have received no opposition from the People regarding Turner's request for modification of the amended abstract of judgment.

## DISCUSSION

### I. *Equal Protection Challenge*

Pursuant to section 3051, subdivisions (a) and (b), offenders 25 years of age and younger at the time of their offense are eligible for a youth offender parole hearing after 15, 20, or 25 years in prison, depending on the sentence. (§ 3051, subds. (a)–(b).) Section 3051, subdivision (h) (section 3051(h)), however, excludes several categories of youth offenders: offenders sentenced under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12); sex offenders sentenced under the "One Strike" law (§ 667.61); offenders sentenced to life without the possibility of parole (LWOP) for controlling offenses committed after age 18; and "individual[s] to whom [the] section would otherwise apply, but who, subsequent to attaining 26 years of age, commit[] an additional

---

[4] Aside from his equal protection claim and his challenge to the omission of presentence conduct credits, Turner does not contend that his sentence was otherwise unlawful.

5

crime for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison." (§ 3051, subd. (h).)

Turner was 22 years old when he committed some of the instant offenses and 23 years old when he committed the others. However, because he was sentenced to a "three strike" term based on his prior serious felony convictions, Turner is statutorily ineligible for a youth offender parole hearing. (§ 3051, subd. (h).)

Turner contends his categorical ineligibility, as a Three Strikes offender, for an early youth offender parole hearing violates his rights under the federal and state equal protection clauses.

A. *Legal Principles Related to Equal Protection*

We review Turner's equal protection claim—which we perceive is a facial challenge—de novo.[5] (*People v. Laird* (2018) 27 Cal.App.5th 458, 469.) "The Fourteenth Amendment to the United States Constitution and article I,

---

[5] We disagree with Turner that he raised his equal protection claim below. The forfeiture rule applies to claims involving an alleged constitutional violation (*In re Seaton* (2004) 34 Cal.4th 193, 197–198) and specifically "in the context of sentencing . . . ." (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) Turner maintains he asserted the "gist" of his equal protection claim, such as commenting, for example, "When someone convicted of murder can be considered for parole, why not Mr. Tuner [*sic*]?" However, as the People note, such remarks were made in the context of Turner's renewed motion to dismiss his prior strikes pursuant to *Romero, supra*, 13 Cal.4th 497, so that he could be eligible for a youth offender parole hearing under section 3051, subdivision (b)(3). Such assertion presumes the validity of the statute and is different from the more fundamental issue he now raises—whether section 3051 treats youth Three Strikes offenders differently than other youth offenders, in violation of equal protection. "However, the forfeiture rule does not extend to facial constitutional challenges presenting pure questions of law that can be resolved without referring to the particular sentencing record developed below." (*People v. Patton* (2019) 41 Cal.App.5th 934, 945, citing *In re Sheena K., supra*, 40 Cal.4th at pp. 885, 889.) We thus consider Turner's arguments.

section 7 of the California Constitution guarantee all persons the equal protection of the laws." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195 (*Edwards*).) "The concept of equal protection recognizes that persons who are similarly situated with respect to a law's legitimate purposes must be treated equally. [Citation.] Accordingly, ' "[t]he first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." ' [Citation.] 'This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' [Citation.]" (*People v. Brown* (2012) 54 Cal.4th 314, 328.)

The parties disagree on the applicable standard for determining whether differential treatment of similarly situated persons violates equal protection. Turner contends strict scrutiny applies here, relying on *People v. Olivas* (1976) 17 Cal.3d 236 (*Olivas*), while the People argue that rational basis review applies. (See *People v. Wilkinson* (2004) 33 Cal.4th 821, 836 (*Wilkinson*) [" 'we apply different levels of scrutiny to different types of classifications. At a minimum, a statutory classification must be rationally related to a legitimate governmental purpose. [Citations.] Classifications based on race or national origin . . . and classifications affecting fundamental rights . . . are given the most exacting scrutiny' "].)

In *Olivas, supra*, 17 Cal.3d 236, the Supreme Court addressed the commitment of a juvenile convicted in adult court to the California Youth Authority for a period longer than the maximum prison sentence that might have been imposed for the same offense if committed by a person over the age of 21 years. (*Id.* at p. 239.) The court held that "personal liberty" constitutes

7

a fundamental right that triggers application of the strict scrutiny standard. (*Id.* at pp. 250–251.)

Our Supreme Court, however, later held that *Olivas* should not be read as requiring strict scrutiny review "whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes . . . ." (*Wilkinson, supra*, 33 Cal.4th at p. 837.) Such a broad reading of *Olivas* "would 'intrude[] too heavily on the police power and the Legislature's prerogative to set criminal justice policy.' " (*Id.* at p. 838.) As explained in *People v. K.P.* (2018) 30 Cal.App.5th 331, 343, "where the issue is not whether a deprivation of an individual's liberty will occur, but rather the duration of that deprivation, rational basis review is appropriate because ' " ' "the power to define crimes and fix penalties is vested exclusively in the legislative branch." ' " ' " (Citing *People v. Farley* (2009) 46 Cal.4th 1053, 1119.) In light of these principles, we are unpersuaded that a fundamental interest is at stake here, warranting strict scrutiny analysis. The issue in this case is not akin to that in *Olivas*, which concerned a law that resulted in greater punishment for separate defendants convicted of the same crime in the same court based solely on the ages of the defendants. Furthermore, Turner does not argue he is a member of a protected class, and section 3051 does not classify by race, national origin, or any other protected classification. Accordingly, we find the rational basis standard applies.

Under that standard, " '[e]qual protection of the law is denied only where there is no "rational relationship between the disparity of treatment and some legitimate governmental purpose." ' [Citation.] 'This standard of rationality does not depend upon whether lawmakers ever actually articulated the purpose they sought to achieve. Nor must the underlying

8

rationale be empirically substantiated. [Citation.] While the realities of the subject matter cannot be completely ignored [citation], a court may engage in " 'rational speculation' " as to the justifications for the legislative choice [citation]. It is immaterial for rational basis review "whether or not" any such speculation has "a foundation in the record." ' [Citation.] To mount a successful rational basis challenge, a party must ' "negat[e] every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, '[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law.' [Citation.]" (*Edwards, supra*, 34 Cal.App.5th at pp. 195–196.) "Moreover, equal protection does not require a perfect fit between a statute's means and the legitimate state ends those means can serve." (*People v. Chatman* (2018) 4 Cal.5th 277, 290.)

We now turn to the merits.

B.    *The statutory exclusion of Three Strikes offenders from youth offender parole hearings does not violate equal protection.*

Turner argues that he is similarly situated to youth offenders who were not sentenced pursuant to the Three Strikes law. He further contends that under any standard of scrutiny, the differential treatment of Three Strikes offenders violates equal protection.[6] We disagree.

In *People v. Wilkes* (2020) 46 Cal.App.5th 1159 (*Wilkes*), our First District colleagues in Division Five rejected a challenge similar to Turner's.[7] There, the jury found the defendant guilty of, among other offenses, attempted murder and found true an allegation it was committed willfully,

---

[6] Turner does not present an analysis of his claim under the strict scrutiny standard.

[7] In his reply brief, Turner addresses the *Wilkes* decision, which was decided after he filed his opening brief.

9

deliberately, and with premeditation.  (*Id.* at pp. 1163–1164.)  The defendant admitted prior conviction allegations, and the court sentenced him pursuant to the Three Strikes law to a term of 59 years four months to life.  (*Id.* at p. 1164.)  On appeal, the defendant, who was 25 years old when he committed the offenses, raised an equal protection challenge to section 3051(h), arguing that he was similarly situated to youth offenders who were not sentenced pursuant to the Three Strikes law and that there was no rational basis for the different treatment.  (*Id.* at pp. 1164–1165.)

The *Wilkes* court disagreed.  It cited several appellate decisions that "have rejected equal protection challenges to the differential treatment of three strikes offenders, concluding that such offenders are not similarly situated to nonrecidivist offenders and/or that a rational basis exists to treat them differently."  (*Wilkes, supra*, 46 Cal.App.5th at pp. 1165–1166.)  For example, in *People v. Cooper* (1996) 43 Cal.App.4th 815, 829, the court explained, "A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system. . . .  It is reasonable for the Legislature to distinguish between those felons . . . who come to court with a history of serious or violent felony convictions and those who do not."  (See *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332 ["The system of imposing greater punishment on *all* persons who commit a felony-grade crime after having committed one or more serious or violent felonies in the past, is rationally related to the legitimate public objective of discouraging recidivism"]; *People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 ["It is clear the Legislature intended to set appellant and other recidivists with prior 'strike' convictions apart from first time offenders and those with less serious

10

criminal histories; it is equally clear it did so with a legitimate objective in mind"]; *People v. McCain* (1995) 36 Cal.App.4th 817, 820 ["The Legislature has seen fit to increase the severity of punishment for recidivists who have committed serious or violent felonies and who again commit felony offenses. . . . [W]e cannot say harsher treatment for such recidivists is irrational or arbitrary such that it denies them equal protection under the law"].)

*Wilkes, supra*, 46 Cal.App.5th 1159, applied the reasoning of the foregoing cases.  It explained, "The purpose of section 3051 is 'to give youthful offenders "a meaningful opportunity to obtain release" after they have served at least 15, 20, or 25 years in prison (§ 3051, subd. (e)) and made " 'a showing of rehabilitation and maturity' " ' and 'to account for neuroscience research that the human brain—especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s.' [Citation.]"  (*Id.* at p. 1166.)

The *Wilkes* court then pointed out that a distinguishing characteristic of Three Strikes offenders is that they are not being sentenced for a first-time offense:  "Assuming a Three Strikes youth offender is similarly situated to other youth offenders for purposes of section 3051, the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' [citation]—presents too great a risk of recidivism to allow the possibility of early parole."  (*Wilkes, supra*, 46 Cal.App.5th at p. 1166.)

We agree with the reasoning in *Wilkes* and apply it to the instant case. We do not find that Turner, who has committed repeat serious or violent felonies, is similarly situated to other youth offenders without strike priors

11

for purposes of the law. Even assuming they are similarly situated, the Legislature's treatment of youths sentenced under the Three Strikes law so as to exclude them from the benefit of early parole consideration is rationally related to the legitimate governmental objective of discouraging recidivism. (See *Wilkes, supra*, 46 Cal.App.5th at p. 1166.)

Indeed, in his reply brief, Turner acknowledges that the *Wilkes* "court rejected the argument that [he] makes here." However, he asks us to reach the opposite conclusion, arguing that "recidivism is not a rational basis for the distinction in section 3051" and pointing us to *Edwards, supra*, 34 Cal.App.5th 183. In *Edwards*, the court held the statutory exclusion of youths convicted and sentenced for sex crimes under the One Strike law (§ 667.61) violated equal protection.[8] (*Edwards*, at p. 199.) The *Edwards* court found "no rational relationship between the disparity of treatment [of One Strike offenders] and a legitimate governmental purpose" (*id.* at p. 197), noting that section 3051 included "first degree murderers but exclude[d] One Strikers" (*id.* at p. 195).

*Edwards* is distinguishable. By definition, Three Strikes offenders, unlike those sentenced for sex offenses under the One Strike law such as the defendant in *Edwards*, are not being sentenced for a first-time offense. (See

---

[8] The California Supreme Court has taken up the equal protection issue raised in *Edwards* as to youth sentenced under the One Strike law, which another appellate court addressed in *People v. Williams* (2020) 47 Cal.App.5th 475, review granted July 22, 2020, S262229.) In *Williams*, the court, applying a rational basis test, rejected a One Strike defendant's equal protection challenge based on *Edwards*. (*Williams*, at pp. 490, 493.) The court disagreed with *Edwards* and held "the threat of recidivism by violent sexual offenders—as demonstrated by the Legislature's enactment of several comprehensive statutory schemes to curb such recidivism among such offenders—provides a rational basis for the Legislature's decision to exclude one strikers from the reach of section 3051." (*Williams*, at p. 493.)

*Wilkes, supra*, 46 Cal.App.5th at p. 1166 [" 'The "One Strike" law is an alternative, harsher sentencing scheme that applies to specified felony sex offenses,' such that ' "a first-time offense can result in one of two heightened sentences" ' "].) Indeed, as observed in *Wilkes*, the *Edwards* court "took pains to 'note that criminal history plays no role in defining a One Strike crime' and that '[t]he problem in this case is' the categorical exclusion of 'an entire class of youthful offenders convicted of a crime short of homicide . . . , *regardless of criminal history . . . .*' " (*Wilkes*, at pp. 1166–1167, quoting *Edwards, supra*, at p. 199.) Accordingly, *Edwards* is inapplicable.

Turner also relies on the concurring opinion in *In re Jones* (2019) 42 Cal.App.5th 477 (*Jones*). *Jones*, however, addressed a different statute—section 1170, subdivision (d). (*Jones, supra*, 42 Cal.App.5th at p. 480.) The defendant argued the statute violates equal protection because it treats youthful offenders who commit murder and are sentenced to LWOP differently than juveniles who commit murder and are sentenced to LWOP; the former are not entitled an opportunity to petition for resentencing while the latter are. (*Ibid.*) The *Jones* court rejected that argument, concluding that "[t]he Legislature could reasonably decide that for those convicted of LWOP crimes, the line should be drawn at age 18, rather than at some later date when the brain is fully developed." (*Id.* at p. 483.)

The concurring opinion in *Jones, supra*, 42 Cal.App.5th 477, then introduced the separate question of whether section 3051's disparate treatment of young adult offenders serving LWOP sentences and those serving non-LWOP sentences violates equal protection. (*Jones, supra*, 42 Cal.App.5th at pp. 485–486 (conc. opn. of Pollak, P. J.).) The concurrence suggested that it may, explaining: "The presumptive fact that the LWOP sentence was based on a more serious offense provides no rational basis for

13

the distinction because the statute is not designed to determine the degree of appropriate punishment but to determine whether the individual has outgrown his or her criminality. There is no reason to conclusively presume that one such person is more likely to have satisfactorily matured than the other." (*Id.* at p. 486.) The concurrence, however, declined to ultimately resolve the equal protection question. (*Id.* at pp. 483–484, 486–487.)

Turner's reliance on the concurrence in *Jones* is misplaced. *Jones* did not consider whether Three Strikes youth offenders are similarly situated to other youth offenders without strike priors for purposes of the statute and, if so, whether exclusion of the former from early parole consideration is rationally related to a governmental objective. In any event, we are unpersuaded that its reasoning compels the conclusion Turner seeks here. As the concurrence noted, "the statute is . . . designed . . . to determine whether the individual has outgrown his or her criminality." (*Jones, supra*, 42 Cal.App.5th at p. 486 (conc. opn. of Pollak, P. J.).) We think that the Legislature rationally could have concluded that a young adult's recidivist behavior made him or her more dangerous and less likely to have "outgrown his or her criminality" than nonrecidivists. (*Ibid.*) That this conclusion may be wrong in some cases does not render the Legislature's measure irrational. (See *People v. Turnage* (2012) 55 Cal.4th 62, 77–78.)

Similarly unavailing is Turner's reliance on *Graham v. Florida* (2010) 560 U.S. 48, *Miller v. Alabama* (2012) 567 U.S. 460, and *People v. Contreras* (2018) 4 Cal.5th 349. These cases curtailed the imposition of LWOP sentences for juvenile offenders on Eighth Amendment grounds. (See *Graham, supra*, 560 U.S. at p. 74 [forbids a juvenile who commits a nonhomicide offense from being sentenced to LWOP]; *Miller, supra*, 567 U.S. at p. 465 [forbids the automatic imposition of LWOP on juveniles in homicide

cases]; see also *Contreras, supra*, 4 Cal.5th at pp. 356, 379 [held unconstitutional sentences of 50 years to life and 58 years to life imposed under the One Strike Law on 16-year-old nonhomicide offenders].) We do not find these cases controlling because they were analyzed under the Eighth Amendment's prohibition against cruel and unusual punishment and not as to whether such sentences violated the equal protection clause. In addition, they only addressed the constitutional implications of *juvenile* offenders sentenced to LWOP. (See *Contreras, supra*, 4 Cal.5th at p. 360 ["The [U.S.] Supreme Court has interpreted the Eighth Amendment to impose unique constraints on the sentencing of juveniles who commit serious crimes"]; see also *ibid.* ["This case law reflects the principle that 'children are constitutionally different from adults for purposes of sentencing' "].) Here, in contrast, Turner was a 22- or 23-year-old *adult* when he committed repeat serious and violent felonies. Accordingly, *Graham* and its progeny are inapposite.

Accordingly, we find Turner has not demonstrated that his disparate treatment under section 3051(h) runs afoul of the equal protection clause.

We acknowledge Turner's general point, however. Section 3051 appears to reflect a legislative judgment that offenders who are not yet neurologically developed at the time of their offense should have an opportunity to demonstrate rehabilitation after an extended period of incarceration. Notwithstanding this intent, the Legislature could rationally determine that recidivist offenders, including those who commit offenses during their youth, "present[] too great a risk of recidivism to allow the possibility of early parole." (*Wilkes, supra*, 46 Cal.App.5th at p. 1166.) We conclude there is a rational basis for the Legislature's choice and that is enough to satisfy equal protection.

15

**II.**   *Presentence Conduct Credits*

In the first appeal in this matter, we determined that the trial court should have awarded Turner 84 days of presentence conduct credits, in addition to 563 days of credit for actual time he served in custody (§§ 2933.1, 4019).  (*Turner, supra*, A148401, pp. 12–13.)  We remanded the case and directed the court to award Turner 84 additional days of presentence conduct credits.  (*Turner, supra*, A148401, p. 13.)

On remand, the trial court awarded Turner 563 days plus 1,106 days of credit for actual time served in custody between the time he was first sentenced on March 18, 2016, and resentenced on March 29, 2019.  While this appeal was pending, Turner submitted a letter to the trial court, which he forwarded to this court, indicating that the amended abstract of judgment does not include the 84 additional days of presentence custody credits.  Accordingly, Turner requests that it be corrected to include those credits.  We have received no opposition from the People regarding Turner's request to correct the amended abstract of judgment.  We grant Turner's request and modify the judgment accordingly.

## DISPOSITION

The judgment is modified to award 84 additional days of presentence conduct credit.  As so modified, the judgment is affirmed.  The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment that has been modified accordingly.

_____
Jackson, J.

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Wiseman, J.*

A156920/*People v. Tajiri Hamisi Turner, Jr.*

_____

     * Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.