Filed 2/2/23  P. v. Nelson CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B313825 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA019560) |
| v. | |
| SERGIO NELSON, | |
| Defendant and Appellant. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, Mike Camacho, Jr., Judge.  Affirmed in part and reversed in part.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Chung L. Mar, Deputy Attorneys General for Plaintiff and Respondent.

In 1993, defendant Sergio Nelson shot to death two individuals sitting in a parked car.  In 2016, the Supreme Court reversed the lying in wait special circumstance finding and remanded the case to the superior court for a new penalty trial.  (*People v. Nelson* (2016) 1 Cal.5th 513, 522 (*Nelson*).)  The prosecution thereafter elected not to seek the death penalty and defendant agreed to waive his right to a new penalty trial.  Defendant filed a motion for relief under the California Racial Justice Act of 2020 (Stats. 2020, ch. 317, § 1, p. 3706) (the Racial Justice Act), which the court summarily denied.  The court sentenced defendant to life in prison without the possibility of parole.

On appeal, defendant contends that the court erred (1) by denying, without an evidentiary hearing, his motion for relief under the Racial Justice Act; (2) by imposing the upper terms on the firearm enhancements although no jury findings supported such terms; and (3) by imposing a sentence that violates federal and state constitutional bans on cruel and unusual punishment.  We agree with his contention regarding the imposition of the upper term for the firearm enhancements and reject his remaining contentions.

**FACTUAL SUMMARY AND PROCEDURAL HISTORY**

Our Supreme Court summarized the facts of this case as follows:  "On September 11, 1993, [defendant] resigned from his job at Target after failing to receive a promotion.  Shortly before 4:00 a.m. on October 2, 1993, he shot and killed Robin Shirley, the woman who received the promotion [defendant] believed he had deserved, and Lee Thompson, a coworker who had defended Shirley when [defendant] harassed her about her promotion.  [Defendant] knew Shirley typically waited in the parking lot for

the store to open.  He rode to the Target parking lot on his bicycle, armed with a loaded gun.  Shirley and Thompson were in the front seat of Thompson's car.  [Defendant] parked his bicycle, approached the car on foot from behind and fired several shots into the car through an open rear window, then started to walk away before returning and firing again into the car.  After shooting Shirley and Thompson, [defendant] fled the scene on his bicycle, which he then abandoned when police chased him." (*Nelson*, *supra*, 1 Cal.5th at p. 522.)

In August 1995, a jury convicted defendant of two counts of first degree murder (Pen. Code, § 187)[1] and found true special circumstance allegations that he committed multiple murders (§ 190.2, subd. (a)(3)) and committed them while lying in wait (§ 190.2, subd. (a)(15)).  The jury also found that he personally used a firearm in committing each murder.  (Former § 12022.5, subd. (a).)  The court sentenced him to death.

In 2016, the California Supreme Court reversed the lying in wait special circumstance finding based on insufficiency of the evidence and, accordingly, reversed his death sentence. (*Nelson*, *supra*, 1 Cal.5th at pp. 549–550, 574.)  The court held that defendant was "entitled to a new penalty trial."  (*Id.* at p. 573.)

Because neither the prosecution nor the defendant requested a new penalty trial, the court set only a resentencing hearing.

On July 6, 2021, the date set for sentencing, defendant, without the assistance of his counsel, filed a motion for relief

---

[1] Subsequent unspecified statutory references are to the Penal Code.

under the Racial Justice Act.  In support of his Racial Justice Act motion, defendant wrote that he "is of mixed race"[2] (capitalization omitted) and alleged that of the 215 people on California's death row as a result of prosecutions in Los Angeles, 85 percent "are people of color."  As support for the statistic, defendant cites an amicus curiae brief filed in the California Supreme Court by Governor Newsom in *People v. McDaniel* (2021) 12 Cal.5th 97.[3]  Defendant further asserted that he "was charged and convicted of a more serious offense than the defendants of other races, ethnicities, or national origins who commit similar offen[s]es and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained conviction for more serious offen[s]es against people who share the defendant's race, ethnicity or national-origin in the Los Angeles County."  Defendant sought an evidentiary hearing on the motion and an order dismissing the enhancements or the special circumstance allegations, and a reduction of "one or more of the charges."

The court denied defendant's motion.  The court briefly described the circumstances of the murders, then explained that "[t]his was a cold-blooded killing.  It doesn't matter what your race, your ethnicity, color of your skin is.  You're going to be treated as the law mandates for an individual who has engaged in that type of conduct."

---

[2] A probation report describes Nelson as "Black/Hispanic."

[3] The cited amicus curiae brief is purportedly attached as an exhibit to defendant's motion, but it is not included in our record.  On appeal, defendant cites to an Internet address for the amicus brief, but the address does not appear to work.  The cited brief can be found here:  https://perma.cc/FT4F-DHV2.

The court then sentenced defendant on count 1 to prison for life without the possibility of parole based on the multiple murder special circumstance finding, plus the upper term of five years on the firearm enhancement.[4] The court struck the multiple murder special circumstance allegation as to count 2 and sentenced defendant on that count to a consecutive prison term of 25 years to life, plus a consecutive five years on the firearm enhancement.[5] The court sentenced count 2 consecutive to count 1 because of "the brutality and senseless nature of the attack upon these two separate victims at the same time."

The court acknowledged and considered its discretion to strike the firearm enhancements (see § 12022.5, subd. (c)), but declined to do so, stating: "[S]triking the gun use enhancements as to either of these two counts . . . would be tantamount to disregarding the means used to violently end the lives of these two unsuspecting victims. This was a senseless crime. There was no reason for it despite your motivation, and the court[']s not going to give you the benefit of striking a gun use allegation when you used the gun to end the lives of these two individuals."

---

[4] At the time of defendant's offenses, former section 12022.5, subdivision (a), prescribed a sentencing range for the firearm enhancement of three, four, or five years. (Stats. 1990, ch. 41, § 3, pp. 245−246.) The current version of the statute permits a sentence enhancement of up to 10 years. (§ 12022.5, subd. (a).) Both versions require the enhancement term run consecutive to the base term.

[5] As the trial court acknowledged, the court was required to strike one of the multiple murder special circumstance findings because "the use of two such special circumstance allegations artificially inflates the seriousness of the defendant's conduct." (*People v. Jones* (1991) 53 Cal.3d 1115, 1148.)

Defendant timely appealed.

## DISCUSSION

### A. *The Racial Justice Act*

The Legislature enacted the Racial Justice Act in 2020 with the expressed intent "to eliminate racial bias from California's criminal justice system" and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing." (Stats. 2020, ch. 317, § 2(i), pp. 3707–3708; see *Young v. Superior Court of Solano County* (2022) 79 Cal.App.5th 138, 149–150.) Its goal is "to provide remedies that will eliminate racially discriminatory practices in the criminal justice system, in addition to intentional discrimination." (Stats. 2020, ch. 317, § 2(j), p. 3708.)

The Racial Justice Act enacted section 745, which provides that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) A defendant may establish a violation of the Racial Justice Act in various ways, two of which are relevant here.

Under subdivision (a)(3) of section 745, which is concerned with racial bias in charging decisions and convictions, the defendant must prove by a preponderance of the evidence that he or she "was charged or convicted of a more serious offense than defendants of other races, ethnicities, or national origins who have engaged in similar conduct and are similarly situated, and the evidence establishes that the prosecution more frequently sought or obtained convictions for more serious offenses against people who share the defendant's race, ethnicity,

6

or national origin in the county where the convictions were sought or obtained."  (§ 745, subd. (a)(3).)

Under subdivision (a)(4)(A) of section 745, which is concerned with racial bias in sentencing, the defendant must prove by a preponderance of the evidence that "[a] longer or more severe sentence was imposed on the defendant than was imposed on other similarly situated individuals convicted of the same offense, and longer or more severe sentences were more frequently imposed for that offense on people that share the defendant's race, ethnicity, or national origin than on defendants of other races, ethnicities, or national origins in the county where the sentence was imposed."  (§ 745, subd. (a)(4)(A).)

The phrases, " 'more frequently sought or obtained' " and " 'more frequently imposed' " are statutorily defined to permit "statistical evidence, aggregate data, or nonstatistical evidence" that "demonstrates a significant difference in seeking or obtaining convictions or in imposing sentences comparing individuals who have committed similar offenses and are similarly situated, and the prosecution cannot establish race-neutral reasons for the disparity."  (§ 745, subd. (h)(1).)[6]

---

[6] At the time Nelson made his motion and the court ruled on it, section 745 did not include a definition of "similarly situated."  The Legislature subsequently amended section 745 to define that phrase.  The statute now provides:  " 'Similarly situated' means that factors that are relevant in charging and sentencing are similar and do not require that all individuals in the comparison group are identical.  A defendant's conviction history may be a relevant factor to the severity of the charges, convictions, or sentences.  If it is a relevant factor and the defense produces evidence that the conviction history may have been

7

Relief under the Racial Justice Act may be sought by motion prior to the entry of judgment or, if judgment has been entered, by petition for writ of habeas corpus. (§§ 745, subd. (b); 1473, subd. (f).) If the defendant proceeds by motion and "makes a prima facie showing of a violation of subdivision (a)" of section 745, the court must hold a hearing on the defendant's motion. (§ 745, subd. (c).)

The defendant makes a prima facie showing if he or she "produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred." (§ 745, subd. (h)(2).) A " 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (*Ibid.*)

Here, we agree with the trial court that defendant failed to make a prima facie showing of relief under the Racial Justice Act. The only fact defendant produced in support of his claim that the District Attorney charged him, or that the jury convicted him, in violation of subdivision (a)(3) of section 745 is a statistic that 85 percent of the 215 people on California's death row as a result of prosecutions in Los Angeles County "are people of color." Regardless of whether that allegation is true, the statistic provides no information with which to compare the race, ethnicity, or national origin of persons who, like defendant, engaged in multiple murders and the race, ethnicity, or national origin of persons who, having engaged in multiple murders, were charged with crimes or special circumstances less serious than

---

impacted by racial profiling or historical patterns of racially biased policing, the court shall consider the evidence." (§ 745, subd. (h)(6); Stats. 2022, ch. 739, § 2.)

8

the charges and special circumstances alleged against defendant. Defendant did not, therefore, establish a substantial likelihood that the District Attorney charged offenses less serious than special circumstance murder against persons who engaged in multiple murders and whose race, ethnicity, or national origin is different than defendant's. Similarly, the proffered statistic fails to show a substantial likelihood that juries convicted such other persons of charges less serious than defendant's special circumstance murder conviction.

Defendant asserts that the death row statistic shows that persons of color are charged with and convicted of special circumstance murders in Los Angeles County at a rate that is significantly disproportionate to their share of the population. A relevant comparison, however, is not of the racial makeup of death row inmates and the racial makeup of the general population, but rather the racial makeup of those charged with or convicted of multiple murders and the racial makeup of those who engaged in multiple murders. Defendant offered no facts to support such comparison.

Defendant also failed to make a prima facie showing of unlawful racial bias in sentencing. Under section 745, subdivision (a)(4), defendant was required to produce facts that, if true, establish a substantial likelihood that the court imposed on him a "longer or more severe sentence" than the sentence "imposed on other similarly situated individuals convicted of the same offense." (§ 743, subd. (a)(4)(A).) Defendant relied on the same statistic cited above: 85 percent of persons on death row as a result from prosecutions in Los Angeles County are persons "of color." The cited statistic, however, provides no information as to whether defendant's life without the possibility of parole

9

sentence is a longer or more severe sentence than the sentence imposed on persons of other races, ethnicities, or national origin who were convicted of special circumstance murder. Indeed, the statistic is particularly unhelpful to defendant's sentencing bias claim because the statistic relates to people sentenced to death, whereas the prosecution elected in this case to seek, and the court imposed, the less severe sentence of life without the possibility of parole. Moreover, as the Attorney General points out, defendant's sentence is by statute the least severe sentence a court may impose on a defendant convicted of special circumstance murder. (§ 190.2, subd. (a).)

Defendant also challenges certain statements the court made in connection with its ruling on defendant's Racial Justice Act motion. The court told defendant, for example, that his motion was "racked with baseless allegations and boldface conclusions that you are the victim of systematic, racial injustice within the criminal justice system" and that "[y]ou feel that your race, ethnicity, color of your skin has impacted how the prosecution has treated your case." The court also referred to "the victim impact comments" the court had received and how persons affected by the murders have expressed their "disappointment with how the criminal justice system has showed you leniency throughout the years and continues to do so." The court concluded: "You certainly aren't treated differently than any other who would be in your situation." Defendant contends that such comments and considerations "should have no bearing on a determination of the sufficiency of a prima facie showing made in a [C]RJA motion."

We need not determine whether the challenged comments were improper. We review the court's ruling, not its rationale,

and we will not reverse the court's decision where, as here, the facts the defendant produced in support of his motion are insufficient as a matter of law to establish a substantial likelihood that a violation of section 745, subdivision (a) occurred. (§ 745, subd. (h)(2).)

**B.** *Senate Bill No. 567*

In July 2021, when the court resentenced Nelson, section 1170.1, subdivision (d) provided that when an enhancement statute provides for a triad of possible prison terms, "the court shall, in its discretion, impose the term that best serves the interest of justice." (Former section 1170.1, subd. (d); Stats. 2020, ch. 887, § 7, p. 6010.)

Effective January 1, 2022, the Legislature amended section 1170.1, separating subdivision (d) into two paragraphs. (Sen. Bill No. 567 (2021–2022 Reg. Sess.); Stats. 2021, ch. 731, § 2, pp. 9110–9111.) As amended, subdivision (d)(1), provides: "If an enhancement is punishable by one of three terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in [subdivision] (2)." (§ 1170.1, subd. (d)(1).)

Under new subdivision (d)(2) of section 1170.1, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

The parties agree, as do we, that the amendment applies retroactively to defendants, like Nelson, whose judgments are not

11

yet final.  (See *People v. Dunn* (2022) 81 Cal.App.5th 394, 403, review granted Oct. 12, 2022, S275655; *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109 (*Zabelle*).)

Here, the court imposed the upper term of five years on the firearm enhancement.  The court did not explicitly state its reasons for the upper term, or even identify the five-year term as the upper term.  And, as the Attorney General concedes, defendant did not stipulate to facts underlying any aggravating circumstances and the jury did not find such facts, as section 1170.1, subdivision (d) now requires before the court can impose an upper term.

The Attorney General, citing *People v. Sandoval* (2007) 41 Cal.4th 825, argues that the error is harmless because this court can determine, "beyond a reasonable doubt, that the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true at least a single aggravating circumstance had it been submitted to the jury." (*Id.* at p. 839; see *People v. Flores* (2022) 75 Cal.App.5th 495, 499 [applying *Sandoval* test where jury did not find aggravating factors in Senate Bill No. 567 context].)  Defendant contends that the *Sandoval* harmless error standard is not applicable after the enactment of Senate Bill No. 567; rather, he relies on *People v. Lopez* (2022) 78 Cal.App.5th 459, which holds that the reviewing court "must ask both whether we can be certain the jury would have found beyond a reasonable doubt the aggravating circumstances relied on by the court *and* whether the trial court would have exercised its discretion in the same way if it had been aware of the statutory presumption in favor of the middle term." (*People v. Wandrey* (2022) 80 Cal.App.5th 962, 982, review granted Sept. 28, 2022, S275942; accord, *People v.*

12

*Ross* (2022) 86 Cal.App.5th 1346, 1354, petn. for review pending, petn. filed Jan. 30, 2023, S278266); see also *Zabelle*, *supra*, 80 Cal.App.5th at p. 1113.)

We need not determine which test for harmless error applies. Our record does not reveal the aggravating factors the court relied on to impose the upper term on the firearm enhancement. Although the Attorney General points to the court's statements that defendant used a firearm to "violently end the lives of these two unsuspecting victims," that "[t]his was a senseless crime," and "[t]here was no reason for it despite [defendant's] motivation," these statements were made in connection with the court's decision not to strike the gun enhancement, not as reasons to impose the upper term. Even if we infer that the court had the same reasons for imposing the upper term, we cannot say beyond a reasonable doubt that "the jury, applying the beyond-a-reasonable-doubt standard, unquestionably would have found true" the facts underlying these reasons (if *Sandoval* applies) or, if we could make that determination as to some, but less than all of these reasons (and *Lopez* applies), further determine that the court would have exercised its discretion to impose the upper term if it could rely on only the reason or reasons that satisfy the *Sandoval* test.

In the absence of the jury finding or admission required under section 1170.1, subdivision (d)(1), as amended by Senate Bill No. 567, we therefore reverse the court's imposition of the upper term on the firearm enhancements.

### C. *Cruel or Unusual Punishment*

Nelson contends that his life without the possibility of parole sentence violates the federal and state constitutional bans on cruel or unusual punishment. He points to his youth—

he was 19 years old when he murdered Robin Shirley and Lee Thompson—and to his "minimal criminal record"—he had been placed on probation as a juvenile for burglary.

Courts have consistently rejected challenges to the constitutionality of sentences of life without the possibility of parole (or their functional equivalents) for persons who committed their crimes when they were over 18 years of age. (See, e.g., *People v. Montano* (2022) 80 Cal.App.5th 82, 114; *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1032; *People v. Edwards* (2019) 34 Cal.App.5th 183, 190; *People v. Perez* (2016) 3 Cal.App.5th 612, 617; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1220−1221; *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482.)  We agree with these authorities and reject defendant's contention.

14

## DISPOSITION

Defendant's convictions are affirmed.  The imposition of the upper term of five years on the firearm enhancements is reversed.  The People may elect to proceed by meeting the requirement of section 1170.1, subdivision (d)(1) that true findings on facts underlying aggravating circumstances be found by a jury or admitted by the defendant, or alternatively, to have the court resentence defendant on the record as it stands.  After the People make this election, and after the court conducts any further proceedings that may be necessary, the trial court is directed to resentence defendant consistent with applicable sentencing laws.  The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.

15