Filed 2/15/24  P. v. Castillo CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C095889 |
| Plaintiff and Respondent, | (Super. Ct. No. 19FE020524) |
| v. | |
| ADRIAN CASTILLO, | |
| Defendant and Appellant. | |

Defendant Adrian Castillo was sentenced to life without the possibility of parole for a special circumstance murder committed when he was 23 years old.  On appeal, defendant asserts (1) the trial court erred in not striking any of his firearm enhancements under Penal Code[1] section 1385, and (2) he was entitled on equal protection grounds to make a record of relevant evidence to be considered at a future youth offender parole

---

[1] Undesignated section references are to the Penal Code.

1

hearing. We find the trial court abused its discretion under section 1385 and accordingly will vacate defendant's sentence and remand for a full resentencing where the trial court may consider defendant's youth offender parole hearing argument.

## FACTUAL AND PROCEDURAL BACKGROUND

When defendant was 23 years old, he shot at a car from another car, striking the passenger in the face and legs and fatally striking the driver; defendant continued firing shots even after the car he shot at crashed. The jury found defendant guilty of one count of special circumstance murder and one count of attempted murder, and the jury found true three firearm allegations for both offenses.

The trial court sentenced defendant to life without the possibility of parole plus 25 years to life for a firearm enhancement on the murder conviction. As to the attempted murder conviction, the court sentenced defendant to seven years (middle term) plus 25 years to life for a firearm enhancement. The trial court imposed but stayed sentences on the four remaining firearm enhancements.

Defendant's counsel requested the trial court strike all but one of the firearm enhancements under section 1385. The trial court found two mitigating circumstances applied under section 1385: multiple enhancements alleged and application of an enhancement could result in a sentence over 20 years. Still, the trial court declined to strike the enhancements finding it "would not be in the interest of justice and that it would endanger public safety, as the [c]ourt f[ound] that there is a likelihood that its dismissal would result in future physical injury or other serious danger to others. [¶] The foregoing conclusion [wa]s based on the egregious circumstances in this case." The trial court then detailed the facts of the shooting and found: "Based upon the foregoing, the [c]ourt will not exercise its discretion to strike or dismiss the enhancement; and therefore, the penalty imposed here today is life without the possibility of parole plus 57 years to life."

Defendant appeals.

DISCUSSION

I

*The Trial Court Abused Its Discretion Under Section 1385*

Section 1385, subdivision (c)(1) states, in relevant part, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so." Subdivision (c)(2) provides: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

There is no disagreement at least one mitigating circumstance is applicable here: "Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed." (§ 1385, subd. (c)(2)(B).) The trial court considered a second mitigating factor that the "application of an enhancement could result in a sentence of over 20 years." (§ 1385, subd. (c)(2)(C).) Defendant does not argue for application of that mitigating factor on appeal, and it appears inapplicable since defendant's life without parole sentence exceeds 20 years irrespective of the enhancement. (See Couzens et al., Sentencing California Crimes (The Rutter Group 2023) § 12:11 ["There will be no entitlement to relief unless it is the application of the term for the enhancement that results in a sentence of longer than 20 years"].) Since at least one mitigating factor was applicable, however, that factor would have weighed

3

greatly in favor of dismissing the enhancement if the trial court did not find "dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).)[2]

Defendant contends the trial court's endangerment analysis was an abuse of discretion because "no matter how many firearm enhancements the court dismisses, [defendant] still would have to serve his sentence of life without the possibility of parole. Because he will not be released from prison, there is no likelihood that physical injury or other serious danger to the public would result *because of the dismissal*." We agree.

We review the trial court's endangerment finding under section 1385 for an abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) "An abuse of discretion occurs when the trial court, for example, is unaware of its discretion, fails to consider a relevant factor that deserves significant weight, gives significant weight to an irrelevant or impermissible factor, or makes a decision so arbitrary or irrational that no reasonable person could agree with it." (*In re White* (2020) 9 Cal.5th 455, 470.)

The endangerment analysis focuses on dismissal of the enhancement—"there is a likelihood that the dismissal of the enhancement would result in physical injury." (§ 1385, subd. (c)(2).) This is dependent on the dangerousness of the defendant: An enhancement dismissed for a violent offender will pose different risks than for a non-violent offender. But another necessary consideration is the length of the sentence: A dangerous offender released sooner because of a dismissed enhancement poses different

---

[2]     There is a split among appellate courts on how to apply the great weight analysis, and our Supreme Court granted review on this issue. (Compare *People v. Walker* (2022) 86 Cal.App.5th 386, 398-399, review granted Mar. 22, 2023, S278309 ["the additional phrase 'great weight' goes a step further than just the 'shall/unless' dichotomy and thereby erects a presumption in favor of the dismissal of the enhancement"] with *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1098, review granted Apr. 12, 2023, S278894 ["we respectfully decline to follow *Walker* in its more formalistic reading of the provision"].) We do not address this issue since the great weight analysis does not apply if the trial court finds dismissal would endanger public safety, which the trial court did here.

risks than an offender whose release is remote. (See *People v. Mendoza*, *supra*, 88 Cal.App.5th 287, 299 [affirming endangerment finding under § 1385 where "dismissal of the enhancement would result in a sentence of less than six years in prison, which would require [the defendant's] immediate release"].)

*People v. Williams* (2018) 19 Cal.App.5th 1057 (*Williams*) is instructive. There, a different panel of this court analyzed section 1170.126, which requires resentencing of persons serving a three-strike sentence under certain conditions " 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).)" (*Williams*, at p. 1061.) The defendant was sentenced to 193 years to life after being convicted of a third strike and the defendant later petitioned for resentencing under section 1170.126. (*Williams*, at p. 1060.) Based on the defendant's behavior in prison, his criminal history, and how he committed the crime, the trial court found "resentencing [the] defendant posed an unreasonable risk to public safety and accordingly denied his petition." (*Id.* at p. 1061.)

We reversed because the trial court had not first determined which of the defendant's convictions were eligible for resentencing. (*Williams*, *supra*, 19 Cal.App.5th at p. 1063.) This was important since "[d]etermining whether resentencing a defendant poses an unreasonable risk of danger to society is necessarily a forward-looking inquiry. When determining whether resentencing poses an unreasonable risk of danger, the trial court must look to when a defendant would be released if the petition is granted and the defendant is resentenced." (*Ibid.*) We found support for this in *People v. Johnson* (2015) 61 Cal.4th 674, where our Supreme Court concluded a defendant appearing before the Board of Parole Hearings before release was relevant to the section 1170.126 analysis since the inmate " 'will not be released on parole until the Board of Parole Hearings concludes he or she is not a threat to the public safety.' " (*Williams*, at p. 1062, quoting *Johnson*, at p. 695.)

We consequently concluded in *Williams*: "A defendant who would obtain immediate release if the petition is granted poses a different potential danger to society than a defendant who could be released only in his or her [or their] 70's. This applies with even greater force to a defendant who would still be serving a sentence greater than a human lifespan even if the petition were granted. . . . If a defendant's term is still effectively life without parole after resentencing, *then resentencing cannot pose an unreasonable risk to public safety.* [¶] . . . [¶] Resentencing [also] poses significantly less danger to society if it is contingent on a finding at some future date that the defendant no longer poses a threat to society." (*Williams*, *supra*, 19 Cal.App.5th at pp. 1063-1064, italics added.)

This analysis is applicable here because, like section 1170.126, section 1385 mandates lessening a sentence unless its reduction would be a danger to public safety. Applying that reasoning we conclude the trial court here abused its discretion by not considering defendant's term in determining the likelihood dismissal of the enhancements would endanger public safety. The trial court focused exclusively on the crime and defendant's present dangerousness to public safety. This is an appropriate consideration, especially given the violent and callous nature of defendant's crimes, but it is not the sole consideration. Defendant is serving life without parole so he is not currently entitled to a parole hearing. He could theoretically be released through commutation, but that would be an even more stringent process than a typical parole hearing. (See Cal. Const., art. V, § 8.) Regardless, the trial court did not consider defendant's sentence at all in determining whether dismissal of his enhancements could endanger public safety. Thus, "[t]he trial court's failure to consider when, if ever, defendant would be released if the [relief] was granted was an abuse of discretion." (*Williams*, *supra*, 19 Cal.App.5th at p. 1064.)

We consequently vacate defendant's sentence and remand. On remand, the trial court must determine whether dismissal of any enhancements would endanger public

6

safety.  In making that determination, the trial court must consider when defendant could be released if the enhancements are dismissed and whether that release is contingent on future considerations of public safety.  (*Williams*, *supra*, 19 Cal.App.5th at p. 1064.)  If it does not find there is a likelihood the dismissal of an enhancement would result in physical injury or other serious danger to others, the court must then perform the remaining analysis under section 1385, subdivision (c)(2).

II

*The Trial Court Can Consider Defendant's Section 3051 Argument On Remand*

Defendant also contends he was entitled to a hearing under *People v. Franklin* (2016) 63 Cal.4th 261 to develop facts for a future youth offender parole hearing. Defendant acknowledges he is not entitled to a future youth offender parole hearing under section 3051.  He argues instead that section 3051 violates the equal protection clause of the Fourteenth Amendment to the United States Constitution because the section excludes young adult offenders like him from such hearings.  Though defendant failed to raise this issue at sentencing, we address this facial challenge.  (See *In re Sheena K.* (2007) 40 Cal.4th 875, 885.)

"The Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution guarantee all persons the equal protection of the laws." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195.)  "To succeed on an equal protection claim, [defendant] must first show that the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." (*People v. Edwards*, *supra*, 34 Cal.App.5th at p. 195.)  If a class of criminal defendants is similarly situated for purposes of the law challenged to another class of defendants who are treated differently, "courts look to determine whether there is a rational basis for the difference." (*Ibid*.)  "[E]qual protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)  Consequently, to successfully

7

challenge a law on equal protection grounds, defendant must negate " ' "every conceivable basis" ' " on which "the disputed statutory disparity" might be supported. (*Edwards*, at p. 195.) "If a plausible basis exists for the disparity, '[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law.' " (*Id*. at pp. 195-196, citing *Turnage*, at p. 74.)

We independently review defendant's equal protection challenge to section 3051. (*People v. Jackson* (2021) 61 Cal.App.5th 189, 195.)

Section 3051 " 'establish[es] a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she [or they] committed as a juvenile the opportunity to obtain release when he or she [or they] has shown that he or she [or they] has been rehabilitated and gained maturity.' " (*In re Trejo* (2017) 10 Cal.App.5th 972, 980; § 3051 et seq.) The Legislature sought to address "lengthy life sentences [that] did not adequately account for, first, the diminished culpability of youth, and second, youthful offenders' greater potential for rehabilitation and maturation." (*In re Williams* (2020) 57 Cal.App.5th 427, 434.)

In the statute's current form, offenders who committed a qualifying offense under the age of 25 are entitled to a youth offender parole hearing during their 15th year of incarceration if they received a determinate sentence; during their 20th year of incarceration if they received a life term of less than 25 years to life; and during their 25th year of incarceration if they received a term of 25 years to life. (§ 3051, subd. (b)(1)-(3).) Offenders convicted of a qualifying offense committed before the age of 18 for which they were sentenced to life without parole are entitled to a youth offender parole hearing during their 25th year of incarceration. (§ 3051, subd. (b)(4).) Offenders convicted of a controlling offense committed after the age of 18 for which they were sentenced to life without parole, are not entitled to a youth offender parole hearing at any point. (§ 3051, subd. (h).)

8

Defendant contends section 3051 irrationally treats offenders like him, who were over 18 but under 25 at the time of their offense and received life without parole sentences, differently than both (1) offenders 18 years old and under who received life without parole sentences and (2) 18- to 25-year-old offenders who received a 25-year-to-life sentence.

Many courts have already rejected this challenge to section 3051. These courts found there are rational grounds to distinguish young adult offenders based both on age and on sentence, even assuming the offenders are similarly situated. (See, e.g. *People v. Acosta* (2021) 60 Cal.App.5th 769, 772, 779; *In re Williams*, *supra*, 57 Cal.App.5th at pp. 435-437; *People v. Morales* (2021) 67 Cal.App.5th 326, 347-349.) On the age distinction, the United States and California Supreme Courts "have repeatedly found the bright line drawn between juveniles and nonjuveniles to be a rational one when it comes to criminal sentencing." (*People v. Jackson*, *supra*, 61 Cal.App.5th at pp. 196-197.)

As for treating youth offenders with a life without parole sentence differently than those with lesser sentences, "[t]he Legislature has prescribed [a life without parole] sentence for only a small number of crimes. . . . In excluding [life without parole] inmates from youth offender parole hearings, the Legislature reasonably could have decided that youthful offenders who have committed such crimes—even with diminished culpability and increased potential for rehabilitation—are nonetheless still sufficiently culpable and sufficiently dangerous to justify lifetime incarceration." (*In re Williams*, *supra*, 57 Cal.App.5th at p. 436.)

Rejection of equal protection challenges to section 3051 was unanimous among appellate courts until *People v. Hardin* (2022) 84 Cal.App.5th 273, review granted January 11, 2023, S277487, which was filed after defendant's sentencing. (*People v. Ngo* (2023) 89 Cal.App.5th 116, 124, review granted May 17, 2023, S279458 ["Recently, however, one court broke ranks"].) The *Hardin* court agreed there is a rational basis for disparate treatment based on age. (*Hardin*, at p. 285.) But the court found no rational

9

basis for disparate treatment between similarly situated young adults with a life without parole sentence and young adults with lesser sentences.  (*Id*. at p. 290.)

The *Hardin* court's conclusion relied on the Legislature's stated goal of section 3051 to address "neuroscience research that demonstrated the human brain continues to develop into a person's mid-20's, and thus to permit youth offenders a meaningful opportunity for parole if they demonstrate increased maturity and impulse control." (*People v. Hardin*, *supra*, 84 Cal.App.5th at p. 288, rev. granted.)  The court found "for that purpose there is no plausible basis for distinguishing between same-age offenders based solely on the crime they committed."  For example, "[t]he potential for growth and rehabilitation is no greater" for a 19-year-old defendant who murders and commits a robbery at different times than a defendant who commits the same crimes at the same time, triggering a special circumstance and resulting in a life without parole sentence. (*Ibid*.)  Thus, the *Hardin* court concluded, "[W]hile for some purposes it might be reasonable to view special circumstance murder differently from murder with no special circumstance finding, that is not a rational basis for the distinction in eligibility for a youth offender parole hearing made by section 3051."  (*Id*. at p. 290.)

Defendant relies on *Hardin*, but concedes, "*Hardin* is an outlier in finding an equal protection violation."  And at least one court has subsequently disagreed with *Hardin*'s analysis, finding its rational basis analysis improperly focused on " 'the goal of section 3051' " even though "the 'rational basis' inquiry is *not* limited to the purposes of the challenged law."  (*People v. Ngo*, *supra*, 89 Cal.App.5th at p. 125, rev. granted.)  But we need not decide whether we agree with *Hardin* because our Supreme Court is set to resolve this split shortly and we are already vacating defendant's sentence. Consequently, the trial court will conduct a full resentencing on remand and must consider defendant's request under section 3051 in light of our Supreme Court's guidance on this issue, along with any other interim changes in the law.  (*People v. Buycks* (2018) 5 Cal.5th 857, 893 [explaining the " 'full resentencing rule' "].)

10

DISPOSITION

Defendant's sentence is vacated and the matter is remanded for a full resentencing hearing conducted in accordance with current law.  In all other respects, the judgment is affirmed.

/s/
ROBIE, Acting P. J.

We concur:

/s/
DUARTE, J.

/s/
BOULWARE EURIE, J.

11