Filed 10/15/24  P. v. Boiser CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　v.<br><br>GREGORY DERRICK BOISER,<br><br>　　Defendant and Appellant. | D081987<br><br>(Super. Ct. No. 16CR009210) |

APPEAL from a judgment of the Superior Court of San Bernardino County, John Peter Vander Feer, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, A. Natasha Cortina, Paige B. Hazard and Kelley Johnson, Deputy Attorneys General for Plaintiff and Respondent.

After a jury convicted Gregory Derrick Boiser of second degree murder (Pen. Code,[1] § 187, subd. (a); count 1) and attempted murder (§§ 664/187,

---

[1]　　Undesignated statutory references are to the Penal Code.

subd. (a); count 2) with true findings on various firearm allegations,[2] the court sentenced him to 23 years plus 80 years to life, an upper term determinate sentence that took into account Boiser's admission to a prior 2010 conviction constituting both a serious felony (§ 667, subd. (a)(1)) and a strike (§§ 1170.12, subds. (a)-(d), 667.5, subds. (b)-(i)).

On appeal of his convictions (*People v. Boiser* (May 18, 2022, D078985) [nonpub. opn.]), this court vacated Boiser's sentence and remanded the matter for resentencing consistent with section 1170, subdivision (b), which makes the middle term the presumptive sentence in the absence of aggravating circumstances stipulated to by the defendant or found true beyond a reasonable doubt by a trier of fact.

Thereafter, the trial court resentenced Boiser[3] to the middle term of 7 years, doubled to 14 years for the count 2 attempted murder, plus 5 years for the admitted prior conviction, which the court declined to strike under section 1385 or any other basis.  Finding that dismissing the firearm enhancements would endanger public safety, it imposed the same indeterminate sentence: 15 years to life doubled to 30 years to life for Boiser's count 1 murder conviction, and consecutive 25-year-to-life terms for the two section 12022.53, subdivision (d) firearm enhancements, giving Boiser a total sentence of 19 years plus 80 years to life.

---

[2]     These were allegations that in the commission of count 1 and count 2, Boiser personally and intentionally discharged a firearm that caused death or great bodily injury (§ 12022.53, subds. (d), (e)), and in the commission of both counts, he personally and intentionally discharged and used a firearm (§ 12022.53, subds. (b), (c)).

[3]     As Boiser points out, the minute order from the hearing erroneously states that he was resentenced under section 1170.95.

In this appeal, Boiser contends the court abused its discretion and deprived him of his right to due process by imposing a de facto term of life without the possibility of parole and by failing to dismiss his firearm enhancements under section 1385, subdivision (c), in part because it did not give "great weight" to various mitigating factors, nor did it realistically "consider whether there was a *likelihood* [his] release at age 70, 80, or 90 would actually result in 'physical injury or serious danger to others.' " Boiser further contends his ineligibility from the Elderly Parole Program (§ 3055) due to his prior strike violates his right to equal protection.

We asked the parties for supplemental briefing to address the impact, if any, of the California Supreme Court's decision in *People v. Walker* (2024) 16 Cal.5th 1024 on this appeal.[4] Having considered *Walker* and Boiser's contentions, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The detailed background facts are stated in our prior opinion, *People v. Boiser*, *supra*, D078985, and we need not repeat them here. As more fully recounted there, in April 2016, Boiser used a shotgun to shoot a man point blank at his chest, killing him. Then in a kneeling "hunting position," he shot another man trying to escape the scene, essentially blowing apart his

---

[4] The question on review in *Walker* was: "Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances . . . create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" The parties in *Walker* subsequently agreed in briefing before the high court that the Court of Appeal had misinterpreted the language as imposing a rebuttable presumption. (*People v. Walker*, *supra*, 16 Cal.5th at p. 1029.) Thus, in *Walker*, the court considered the parties' dispute over "the proper construction of that phrasing and its impact on a trial court's authority under section 1385, subdivision (c)." (*Ibid.*)

stomach, requiring him to undergo multiple surgeries and use a colostomy bag. Before the events, Boiser told everyone present he was going to kill them, then after the shooting said to his second victim something like, "I got you now."

Before his February 2023 resentencing hearing, Boiser asked the court to dismiss his enhancements under section 1385, subdivision (c), claiming that statute "mandate[d]" their dismissal. Pointing out he was 59 years old, he argued that because he would serve at least 22 years before being eligible for release, the court was required to dismiss all of the enhancements because they would result in a sentence in excess of 20 years, one of the mitigating circumstances of section 1385. Boiser further argued the court could impose only one enhancement (§ 1385, subd. (c)(2)(B)), and that his serious felony and strike allegations were "premised upon convictions that are more than five years old." Boiser maintained given his age and possibility of release it would be "all but impossible to make a finding [he] would be a danger to public safety if the lesser sentence was imposed." He finally argued section 1385 applied to strike allegations.

The People opposed the request, arguing that dismissal under section 1385 was not mandatory in cases involving multiple enhancements or enhancements resulting in over-twenty-year sentences. The People argued that prior strike allegations were not considered enhancements for purposes of applying section 1385.

At the outset of Boiser's February 2023 resentencing hearing, the court stated it had read the parties' papers concerning section 1385, the People's sentencing recommendation, the abstract of judgment and probation report, as well as case authorities concerning the court's discretion to strike or impose a lesser penalty to firearm enhancements. After imposing the 19-year

determinate term, the court imposed the same indeterminate term of 80 years to life, including the 25-year-to-life firearm enhancements on counts 1 and 2.  As to the enhancements, the court stated:

"The court is well aware of its discretion.  I cited [*People v. Tirado* (2022) 12 Cal.5th 688] for the record, so it should be clear to any reviewing court that I recognize I have the discretion to strike the firearm enhancements or to impose some lesser punishment . . . .  [¶]  I also looked at [section] 1385, and I understand [section] 1385."  The court then discussed two cases taking different approaches on the issue, *People v. Walker* (2022) 86 Cal.App.5th 386, affirmed but criticized (Aug. 15, 2024, S278309) 16 Cal.5th 1024 (*Walker*) and *People v. Ortiz* (2023) 87 Cal.App.5th 1087 (*Ortiz*).  It ultimately declined to strike the enhancements notwithstanding the disagreement:

"[M]y position is under either *Walker* or *Ortiz*, under [section] 1385, the—in my view, dismissing the enhancement, unless—would endanger the public safety.  Meaning, there's likelihood dismissal of [the] enhancement would result—and I know the argument by defense is well, the sentence is so long, he's not that young.  So he won't be a danger.  [¶]  This—I think in my review of the evidence, if this was a semi-automatic shotgun, or a pump-action shotgun that's capable of having five rounds or more, instead of a single-shot shotgun, we would probably be dealing with multiple murders here.  He threatened to kill everyone in that room.  He killed one individual, almost killed the other one.  That individual now has a colostomy bag.  Had, basically, his intestines outside of his body and survived.  [¶]  And in looking at the egregious nature of this case, going to that location, trying to chase down—well, shooting the one individual, going after the others, and chasing down and then fleeing, Mr. Boiser is a danger.  He's always going to be a

5

danger. It doesn't take a lot of strength, even at 80 or 90 to pull a trigger of a firearm. There's not a lot of strength involved. It's not like you're attacking somebody with a bludgeon and trying to beat them death. To pull a trigger has very little muscle [*sic*]. Just pull of the trigger. That's what happened in this case, twice. [¶] And so, under [section] 1385, although there's multiple enhancements, the court doesn't believe it's appropriate, and would not strike them. Although, I know I can. Or I can strike them—I know I understand what I can do. I can strike the enhancement. I can also . . . not strike the enhancement and impose the punishment is the other option. I don't believe it's appropriate in the circumstances, regardless of what ultimately becomes the decisions of the Supreme Court, now that we have a split authority."

"[S]o, in looking at the circumstances of this case, you know, it could have been—you know, it's just a horrific act to shoot one person and go after another. And then the threats to kill everybody else in that room that fortunately did not occur. The fact that Mr. Boiser is probably not going to be released in his lifetime, that doesn't change the court's perspective as a basis for either striking under [section] 1385."

The court concluded: "So, either way, under *Walker* or *Ortiz*, and under . . . section 1385, however it's ultimately interpreted, the court believes that based on the circumstances of this case, and what occurred—one person is dead, another person is suffering injuries that will be affected by the rest of his life [*sic*]—that there's a likelihood result of physical injury or serious dangerous to others. Specifically, that additionally that he threatened to kill everybody else in that room, and was unsuccessful in doing so."

The court invited counsel's argument. The prosecutor stated the court had touched on all points he would have addressed. Defense counsel then made his points in the following colloquy:

6

"[Defense counsel]: "Your Honor, as to the determinate term, I'll submit. As to whether the court should exercise its discretion, frankly, I think the statute is strangely written. I think there's a lot of things—

"The court: I agree with you on that point.

"[Defense counsel]: —with the way [section] 1385 is written, that will always be the case. One such is what we have applied here, is that any time a person is given a life sentence of any type, the parole board is going to have to make an assessment before their release, as to whether or not they are a danger to public safety. By definition, one would indicate that someone can't be a danger to public safety under that scheme. And if so, they would be kept in a state prison. There's no danger, and no requirement that a court make an attempt to predict someone's future conduct 15 and/or 25 years or 30 years down the . . . road. [¶] As to the court's interpretation, how is it doing now, I think that's probably a more prudent way of doing things.

"The court: We'll all find out at some point.

"[Defense counsel]: I suppose we'll ultimately find out in this case. I'm not sure it makes a lot of sense for us to even set this case up to have any real issues on appeal, when we know the reality is that Mr. Boiser, at the very earliest, is going to be in his 70's when he gets released—or if he gets released. And if he's ever released, the parole board will determine that he's not a danger to public safety. With those two things, I'll submit.

"The court: I don't base my sentencing decision on what the parole board may or may not do. I base my decision based on the evidence that I heard. And that's going to be my decision. Anything else?

"[Defense counsel]: No, sir. I'll submit."

The court resentenced Boiser to 19 years plus 80 years to life as stated above, along with restitution, fines, fees and custody/conduct credits.

7

## DISCUSSION

### I. *Application of Section 1385 to Boiser's Firearm Enhancements*

#### A. *The Law and Standard of Review*

Under the present version of section 12022.53, a court "may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53, subd. (h); *People v. Tirado, supra,* 12 Cal.5th at pp. 695-696; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 15-16.)

Effective January 1, 2022, the Legislature in Senate Bill No. 81 (Stats. 2021, ch. 721, § 1) amended section 1385 to provide that, with an exception not applicable here, a court "[n]otwithstanding any other law, . . . shall dismiss an enhancement if it is in the furtherance of justice to do so . . . ." (§ 1385, subd. (c)(1); see *People v. Walker, supra,* 16 Cal.5th at p. 1033; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 295.)

Subdivision (c)(2) of section 1385 provides in part: "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of [nine listed] mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." The statute goes on to say that "[w]hile the court may exercise its discretion at sentencing, this subdivision does not prevent a court from exercising its discretion before, during, or after trial or entry of plea." (§ 1385, subd. (c)(3).)

Three mitigating circumstances are relevant here. One is when an enhancement is based on a defendant's prior conviction that is over five years old. (§ 1385, subd. (c)(2)(H).) Another relates to multiple enhancements. (§ 1385, subd. (c)(2)(B).) Specifically, subdivision (c)(2)(B) of section 1385 states that when "[m]ultiple enhancements are alleged in a single case . . . all enhancements beyond a single enhancement shall be dismissed." The third is when applying an enhancement could result in a sentence of over 20 years. (§ 1385, subd. (c)(2)(C).) Subdivision (c)(2)(C) of section 1385 states that when "[t]he application of an enhancement could result in a sentence of over 20 years[ ] . . . the enhancement shall be dismissed."[5]

Following the completion of briefing in this matter, the California Supreme Court decided *People v. Walker*, *supra*, 16 Cal.5th 1024, and addressed how section 1385, subdivision (c)(2)'s "great weight" language

---

[5] Despite the "shall be dismissed" language in subdivisions (c)(2)(B) and (c)(2)(C) of section 1385, California courts have rejected arguments that dismissal is mandated in every case when those mitigating circumstances exist irrespective of a court's finding that an enhancement's dismissal would endanger public safety. (*People v. Mendoza*, *supra*, 88 Cal.App.5th at pp. 295-298; *People v. Lipscomb*, *supra*, 87 Cal.App.5th at pp. 17-20.) In *Mendoza*, the court considered the directive in section 1385, subdivision (c)(2)(C) in the context of the entire statutory framework and concluded that the statute meant "that if the court finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances. [Citation.] The 'shall be dismissed' language in section 1385[, subdivision] (c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety." (*Mendoza*, 88 Cal.App.5th at p. 296.) Boiser does not argue that dismissal of his enhancements was mandated based on the "shall be dismissed" language, or that that language in those mitigating circumstances warrants a different treatment than the others, so, like the court in *People v. Walker* (*supra*, 16 Cal.5th at p. 1035, fn. 5), "we have no occasion to consider that question here." (*Ibid*.)

9

impacted a trial court's sentencing discretion.  Based on that section's plain language (*Walker*, 16 Cal.5th at p. 1033), the court found it "clear that the structure [of section 1385, subdivision (c)] does not 'presume' [citation] an enhancement should be dismissed whenever an enumerated mitigating circumstance is present, but instead 'the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement' [citation] and this 'furtherance of justice' (§ 1385, subd. (c)(2)) inquiry requires a trial court's ongoing exercise of 'discretion' (*id*, subd. (c)(2)). Thus, notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Walker*, 16 Cal.5th at p. 1033, citing *Ortiz, supra*, 87 Cal.App.5th at pp. 1098-1099.)[6]

The court held that the statute's plain language did not create a rebuttable presumption that can only be overcome by a finding that dismissal endangers public safety, but "emphasize[d] . . . that in most cases, 'if the trial court finds that dismissal of an enhancement would endanger public safety, then it is hard to see how dismissal would further the interests of justice,' notwithstanding the applicability of any mitigating factors identified in subdivision (c)(2)." (*People v. Walker, supra*, 16 Cal.5th at p. 1033.)

*Walker* proceeded to "consider what it means for a mitigating circumstance to 'weigh[ ] greatly in favor' . . . of dismissal." (*People v. Walker*,

---

6    The court also cited in part to the Advisory Committee comment to California Rules of Court, rule 4.428, which addresses "[f]actors affecting imposition of enhancements" and provides:  "Case law suggests that in determining  the 'furtherance of justice' the court should consider . . . the factors in aggravation and mitigation including the specific factors in mitigation of section 1385(c); and the factors that would motivate a 'reasonable judge' in the exercise of their discretion." (*People v. Walker, supra*, 16 Cal.5th at p. 1033.)

*supra*, 16 Cal.5th at p. 1034.)  The court adopted the *Ortiz* court's understanding as consistent with the statute's construction:  "[A] trial court must 'engage[ ] in a holistic balancing with *special emphasis* on the enumerated mitigating factors,' in which the mitigating factors weigh 'strongly in favor of . . . dismissal . . . .' "  (*Walker*, at p. 1029, quoting *Ortiz*, *supra*, 87 Cal.App.5th at p. 1096.)  And "mitigating circumstances are entitled to 'increased significance and importance in the [court's] overall balancing of factors' under section 1385."  (*Walker*, at p. 1036.)  The court explained:  "Stated simply, *if the court does not conclude that dismissal would endanger public safety*, then mitigating circumstances strongly favor dismissing the enhancement.  But ultimately, the court must determine whether dismissal is in furtherance of justice.  This means that, *absent a danger to public safety*, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' "  (*Id.* at p. 1036, italics added.)

Walker concluded its formulation gave "force to the 'great weight' standard:  Pursuant to section 1385, subdivision (c)(2), absent a finding that dismissal would endanger public safety, a court must assign significant value to the enumerated mitigating circumstances when they are present.  In practice, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance,

11

such that dismissal of the enhancement is not in furtherance of justice.' " (*People v. Walker*, *supra*, 16 Cal.5th at p. 1037.)

We review for abuse of discretion the "court's determination that dismissal of [an] enhancement would endanger public safety." (*People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 298.) Further, in assessing sentencing issues, we apply a presumption of regularity of judicial exercises of discretion. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) It is Boiser's burden in the face of those presumptions to affirmatively demonstrate error. (*People v. White Eagle* (1996) 48 Cal.App.4th 1511, 1523.)

B. *Contentions*

In his original opening brief, Boiser contended that in resentencing him, the court "disregarded" section 1385 by not giving "great weight" to the mitigating factors. According to Boiser, the court abused its discretion by failing to "consider whether there was a *likelihood* that [his] release at age 70, 80, or 90 would actually result in 'physical injury or serious danger to

others,' " and imposing a life-without-the-possibility-of-parole term.[7]  He asserted the court did not "realistically consider [his] danger to public safety at the earliest time he would be eligible for parole even if given the minimum term, and instead focused solely on the date at the time of resentencing, which was approximately six years after the offense."  He argued we must remand "with instructions to realistically view [his] danger to public safety in terms of conditions present at the time he would be released if enhancements were dismissed such that would allow for the possibility of a parole hearing during his lifetime" and "consider whether, if a parole board determines he is not a danger to others, the governor does not overrule the parole board's decision, and [he] is actually released in his 70[']s, 80[']s, or even 90[']s, there is a *likelihood* that [his] release 'would result in physical injury or other serious danger to others.' "

---

[7]  Boiser also argued that the California Supreme Court has defined the meaning of "great weight" in *People v. Martin* (1986) 42 Cal.3d 437 to mean that giving great weight to a factor or circumstance means the factor or finding recommendation "must be followed in the absence of 'substantial evidence of countervailing considerations of sufficient weight to overcome the [factor].' " (*Id*. at p. 447.)  But *Walker* addressed and rejected the same contention: that "great weight" in section 1385 must be defined in a manner consistent with its definition of that same phrase in *Martin* in that "a court *must dismiss* an enhancement when an enumerated mitigating circumstance is present 'in the absence of "substantial evidence of countervailing considerations of sufficient weight *to overcome* the recommendation." ' " (*People v. Walker*, *supra*, 16 Cal.5th at p. 1035.)  Pointing to the statute's enumeration of the nine specific mitigating factors, *Walker* held that "by its very terms, section 1385, subdivision (c) provides trial courts with clear direction, without the need to import an extratextual definition from *Martin*, *supra*, 42 Cal.3d at page 447." (*Walker*, at p. 1037.)  It found "no indication the Legislature as a whole intended to incorporate *Martin*'s 'great weight' standard into section 1385, subdivision (c)(2) when it adopted Senate Bill No. 81." (*Id*. at p. 1037, fn. 7.)

13

In his supplemental briefing addressing *Walker*, Boiser argues the decision does not change his position that the trial court abused its discretion "by assuming that anything less than a defacto term of LWOP would endanger public safety." He maintains "[i]t was not reasonable for the court, without ever having weighed or considered mitigating circumstances, to decide decades before [he] reached his 70[']s or 80[']s that [he] would still endanger public safety." According to Boiser, *Walker* becomes "relevant only upon remand, when the trial court must apply the formulation as determined by the Supreme Court, and 'assign significant value' to any enumerated mitigating circumstances, which should 'result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that "may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice." ' "

For their part, the People argue *Walker* supports their position, namely "the trial court was not required to consider any of the mitigating circumstances in section 1385, subdivision (c) because it found that dismissal of the enhancements would endanger public safety." They characterize *Walker* as holding "section 1385, subdivision (c)(2) requires a court to afford great weight to enumerated mitigating factors unless dismissal would endanger public safety . . . , but it does not create a rebuttable presumption in favor of dismissing an enhancement."

C. *Analysis*

We conclude Boiser has not shown the trial court abused its discretion in resentencing him and by declining to dismiss his firearm enhancements. The court's explicit finding that such dismissal would endanger public safety, under *Walker*'s formulation of section 1385, subdivision (c)(2), means it was

14

not required to "assign significant value to the [applicable] mitigating circumstances . . . ." (*People v. Walker*, *supra*, 16 Cal.5th at p. 1037 ["*absent a finding that dismissal would endanger public safety,* a court must assign significant value to the enumerated mitigating circumstances when they are present," italics added]; accord, *People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 296 ["if the court finds [under section 1385, subdivision (c)(2)] that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances"]; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1289-1290 ["the Legislature understood that the mitigating circumstances for multiple enhancements and sentences over 20 years do not require dismissal of enhancements where dismissal would endanger public safety"].) Boiser does not assign error to the fact that the court did not explicitly use the words "furtherance of justice" in declining to dismiss the enhancements, but that omission in any event is of no moment when the court's result is legally proper. (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [appellate court reviews result, not rationale]; *People v. Malbry* (2024) 103 Cal.App.5th 1174, 1184 ["It is unnecessary for the trial court to have stated the right rationale if its result is legally proper"].)

Likewise, the court did not err by its findings concerning public safety. Contrary to Boiser's argument, its remarks did in fact show it conducted a forward-looking view of Boiser's potential danger at an advanced age, specifically noting, "It doesn't take a lot of strength, *even at 80 or, 90* to pull a trigger of a firearm." (Italics added.) The court observed that before his shootings, Boiser threatened to kill all the individuals present—"everyone in that room." It focused on Boiser's "horrific" and "egregious" conduct, which is supported by the evidence that Boiser killed one individual by shooting him at point blank range, tried to chase down others, and finally shot his last

15

victim hunting style, blowing apart his stomach. Though the court interrupted its own thought, it in fact expressly found a "likelihood" that dismissal of Boiser's enhancements, and an eventual earlier release, would "result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).) Boiser provides no authority for the proposition that the court was required to consider actions of the parole board in its analysis.

In sum, we reject Boiser's contentions that the trial court abused its discretion in declining to dismiss his firearm enhancements under section 1385.

## II. *Equal Protection Argument*

Boiser contends his exclusion from section 3055's Elderly Parole Program resulting from the trial court's refusal to strike his prior conviction (§ 3055, subd. (g)[8]) violates his right to equal protection under the United States and California Constitutions (see U.S. Const., 14th Amend.; Cal. Const., art. I, § 7). Boiser argues he is similarly situated to other older offenders and "[t]here is no plausible basis for the disparity in treating [him] different from other elderly inmates."[9] He asks us to reach the same

---

[8] Section 3055, subdivision (g) provides: "This section does not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of Section 667, or in cases which an individual was sentenced to life in prison without the possibility of parole or death."

[9] Boiser gives the following example: "[I]f appellant had been convicted in the current case of a mass homicide with multiple verdicts of first degree murder committed with a gun, he would be subject to multiple consecutive terms of 25 years to life. Absent a single strike offense, however, his eligibility for parole would be determined by a [p]arole [b]oard and subject to the governor's veto after serving 20 years in prison. Because of a single prior conviction, though, this sentencing judge made the unilateral decision to deny appellant any possibility of release during appellant's lifetime."

16

conclusion as the court did for the offenders in *People v. Edwards* (2019) 34 Cal.App.5th 183, which has now been disapproved by the California Supreme Court in *People v. Williams* (2024) 17 Cal.5th 99.)[10]  Boiser goes on to point out that the underlying facts about his prior conviction are absent from the record but it was assault not involving a firearm, a wobbler, and argues it does not justify imposition of a de facto life-without-the-possibility-of-parole sentence.  He maintains it violated both due process and equal protection to deprive him of an opportunity for release on "such a sketchy and unclear record . . . ."

The People respond first that the claim is forfeited because Boiser did not raise it in the trial court.  They further argue he cannot satisfy the requirements for an equal protection violation in any event; that as a recidivist he is not similarly situated to non-recidivist offenders, and even if he were so situated, there is a rational basis for treating repeat and non-repeat offenders differently.

We agree Boiser forfeited the claims.  (*People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14 [defendant's failure to raise equal protection in the trial court forfeited it]; *People v. Rogers* (2006) 39 Cal.4th 826, 854 [same]; *People v. Gray* (2024) 101 Cal.App.5th 148, 168 [same].)  " ' "[A] constitutional

---

[10]    The court in *People v. Williams*, *supra*, 17 Cal.5th 99 held that the Legislature's exclusion of One Strike offenders from youth offender parole consideration under section 3051 "is rationally related to legitimate state interests in addressing recidivism of serious and dangerous sex offenders and setting punishments that are appropriate for the triggering crimes committed under the specified circumstances.  Because a plausible basis exists for the Legislature's differential treatment of One Strike offenders, we may not second-guess whether this decision was wise, fair, or logical." (*Id.* at p. 136.) It thus disapproved of *People v. Edwards*, *supra*, 34 Cal.App.5th 183, which had sustained an equal protection challenge in those circumstances. (*Williams*, at pp. 113, 137, fn. 12.)

right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." ' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881.)

Neither an equal protection claim nor the Elderly Parole Program was mentioned in Boiser's section 1385 papers, and defense counsel's remarks at the resentencing hearing cannot reasonably be interpreted as arguing Boiser would be treated differently from other elderly offenders without justification. (See *People v. Hardin* (2024) 15 Cal.5th 834, 847 [" 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification' "].)

Even if we were to consider an equal protection claim for the first time on appeal, we would reject it. As the People point out, the California Supreme Court has changed the inquiry "when plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection . . . ." (*People v. Hardin*, *supra*, 15 Cal.5th at p. 850; see also *People v. Williams*, *supra*, 17 Cal.5th at p. 124 [applying that inquiry "where the issue presented is whether section 3051(h) [an early parole eligibility mechanism for youth offenders] violates equal protection 'by excluding young adults convicted and sentenced for serious sex crimes under the One Strike law (§ 667.61) from youth offender parole consideration, while young adults convicted of first degree murder are entitled to such consideration' "].) In that instance, "courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question. The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin*, at pp. 850-

18

851.[11]) And the burden is on the party challenging the law to show it is not. (*Id*. at p. 851.)

Boiser cannot meet that burden. "The degree of justification required to satisfy equal protection depends on the type of unequal treatment at issue. When a challenged statute involves a suspect classification such as race, or a fundamental right such as the right to vote, courts will apply a heightened scrutiny and will demand greater justification for the differential treatment. [Citation.] Where the challenged statutes involve neither a suspect classification nor a fundamental right, the ' "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." ' " (*People v. Barner* (2024) 100 Cal.App.5th 642, 663, citing *People v. Hardin, supra*, 15 Cal.5th at p. 847.) "Rational basis review 'sets a high bar' for litigants challenging legislative enactments." (*Hardin*, at p. 852.)

Though he does not squarely argue the point, by citing *People v. Edwards, supra*, 34 Cal.App.5th 183, which applied rational basis review, Boiser suggests that standard applies. Indeed, "where the issue is not whether a deprivation of an individual's liberty will occur, but rather the duration of that deprivation, rational basis review is appropriate because ' " ' "the power to define crimes and fix penalties is vested exclusively in the legislative branch." ' " ' " (*People v. Barner, supra*, 100 Cal.App.5th at p. 664 accord, *People v. Williams, supra*, 17 Cal.5th at p. 123 [rational basis review applies to equal protection challenges based on disparate sentencing treatment for comparable crimes].) "Under the rational basis standard,

---

11    Boiser did not file a reply brief on appeal so he had an opportunity to, but did not, address *People v. Hardin, supra*, 15 Cal.5th 834.

' "equal protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " [Citation.] . . . To mount a successful rational basis challenge, a party must " 'negative every conceivable basis' " that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, courts may not second-guess its " 'wisdom, fairness, or logic.' " ' " (*People v. Barner*, at p. 664.; accord, *People v. Hardin*, *supra*, 15 Cal.5th at p. 852 [under rational basis deferential standard "we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated' "]; *People v. Williams*, *supra*, 17 Cal.5th at p. 124.)

In *Barner*, the Court of Appeal held the defendant had "not met his burden to negate every conceivable basis for treating him, a recidivist offender, differently from nonrecidivist offenders" in the context presented there. (*People v. Barner*, *supra*, 100 Cal.App.5th at p. 664.) So it is here. "Numerous courts have rejected equal protection challenges to the differential treatment of ['Three Strikes' law] offenders, concluding that such offenders are not similarly situated to nonrecidivist offenders and/or that a rational basis exists to treat them differently. As one such court reasoned: 'A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system . . . . It is reasonable for the Legislature to distinguish between those felons . . . who come to court with a history of serious or violent felony convictions and those who do not.' "

20

(*People v. Wilkes* (2020) 46 Cal.App.5th 1159, 1165 [rejecting equal protection challenge to section 3051, subdivision (h), making youth offenders sentenced under the Three Strikes law ineligible for youth offender parole hearings].) A Three Strikes offender "presents too great a risk of recidivism to allow the possibility of early parole." (See *id*. p. 1166; see also *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332 ["The system of imposing greater punishment on *all* persons who commit a felony-grade crime after having committed one or more serious or violent felonies in the past, is rationally related to the legitimate public objective of discouraging recidivism"]; *People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 ["It is clear the Legislature intended to set appellant and other recidivists with prior 'strike' convictions apart from first time offenders and those with less serious criminal histories; it is equally clear it did so with a legitimate objective in mind"]; *People v. McCain* (1995) 36 Cal.App.4th 817, 820 ["The Legislature has seen fit to increase the severity of punishment for recidivists who have committed serious or violent felonies and who again commit felony offenses . . . . [W]e cannot say harsher treatment for such recidivists is irrational or arbitrary such that it denies them equal protection under the law"].)

Because the Legislature had a rational basis for excluding recidivist elderly offenders such as Boiser from the Elderly Parole Program, the exclusion does not violate equal protection. The existence of a plausible basis for such differential treatment prevents us from "second-guess[ing] whether this decision was wise, fair, or logical." (*People v. Williams*, *supra*, 17 Cal.5th at p. 136.)

DISPOSITION

The judgment is affirmed.


                                                            O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.